# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BIG BLUE CAPITAL PARTNERS OF WASHINGTON, LLC, | ) ) ) | No. 72623-4-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| McCARTHY & HOLTHUS LLP; QUALITY LOAN SERVICE CORPORATION; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) | FILED: November 23, 2015 |

LEACH, J. — Consistent with its business model, Big Blue Capital Partners of Washington LLC purchased real property from a bankruptcy trustee knowing it was in nonjudicial foreclosure. At the time of the purchase, Big Blue agreed that the nominal price reflected uncertainties and disputes regarding the accounting, validity, and enforceability of the deed of trust, the authority of the foreclosing entities to initiate foreclosure, and the burdensome amount of time, effort, and expense that Big Blue would likely incur in resolving those disputes and uncertainties. Shortly before the pending trustee's sale, Big Blue sued respondents for damages and other relief under the deeds of trust act (DTA), chapter 61.24 RCW, and the Consumer Protection Act (CPA), chapter 19.86

RCW. The superior court dismissed Big Blue's claims on summary judgment. We affirm.

## FACTS

On October 16, 2006, David Riggle signed an adjustable rate note to pay a $300,000 loan from Homecomings Financial LLC. The deed of trust securing the note named Mortgage Electronic Registration Systems Inc. (MERS) as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns."

In 2011, Riggle stopped making payments on the loan. Nothing in the record suggests that Riggle had any uncertainty about whom to make payments to or who to contact regarding a possible loan modification.

In August 2011, MERS assigned the deed of trust to Aurora Bank FSB. On August 1, 2011, a vice-president of Aurora signed a "Declaration of Beneficiary" stating, "Aurora Bank FSB is the holder of the Promissory Note" evidencing Riggle's loan.

On June 19, 2012, Aurora recorded a notice of appointment of Quality Loan Service Corporation of Washington as successor trustee under the deed of trust.

Around this time, Nationstar Mortgage LLC purchased Aurora's servicing rights to numerous loans, including Riggle's.

On August 24, 2012, Aurora executed an assignment of its interest in the deed of trust to Nationstar.

From October 2012 to June 2013, Quality issued four notices of nonjudicial foreclosure sale for Riggle's property. All of the notices were either discontinued or expired by operation of law without a sale. Although the notices are not part of the record, Big Blue alleges that the notices listed Quality as the trustee and Nationstar as the assignee of the deed of trust.

On January 2, 2013, Riggle filed a Chapter 7 bankruptcy. In his bankruptcy schedules, Riggle valued the property in issue at $227,854, encumbered by a secured debt of $315,303. His amended schedule included "potential claims against any and all entities . . . claiming to have an interest, secured and otherwise, over the real property." The potential claims included declaratory relief, state and federal statutory violations, "and all claims having to do with any Note and/or Deeds of Trust which purportedly encumber . . . or otherwise affect title to the real property."

In July 2013, Big Blue paid the bankruptcy trustee $5,000 for a trustee's deed to the Riggle property. The deed recited that the title conveyed was subject to existing encumbrances and included "all the estate which the debtor had at the time of filing of the petition including any amendments in bankruptcy" and "all legal and equitable interests, claims, and rights of the Bankruptcy Estate's

interest . . . in the subject property." Big Blue did not assume Riggle's obligation to pay the note.

A "Trustee Settlement Agreement" allegedly executed by Big Blue and the bankruptcy trustee at the time of purchase[1] stated,

> There currently exist uncertainties and disputes as to the accounting, validity, lawfulness, and enforceability of certain Deeds of Trust as well as disputes and uncertainties as to the authority of the lienholders who may claim the right to enforce those certain Deeds of Trust on the Real Property.
>
> . . . .
>
> . . . [P]ayment of the encumbrances is being deferred until such time as [Big Blue] can resolve the existing disputes and uncertainties . . . so as to ensure any payments due are only received by a party who possesses a lawful, valid, and enforceable security interest against the Real Property. . . . The consideration [takes] into account . . . the disputes and uncertainties regarding the encumbrances of record and the likely burdensome amount of time, effort, and expense that [Big Blue] will incur in resolving any issues with the condition of the Real Property . . . and the existing disputes and uncertainties regarding the encumbrances.[2]

On September 2, 2013, Big Blue informed Quality by letter that it disputed its authority to act as successor trustee and that it objected to the foreclosure sale scheduled for October 18, 2013. The letter stated that as trustee, Quality had a duty of good faith and that "[i]t would be . . . a breach of your duty of good faith[ ] to complete the currently pending . . . . Sale without conducting a detailed

---

[1] Portions of the alleged agreement were filed for the first time on reconsideration below. There is no signature page in the record.

[2] Emphasis added.

investigation into each of the issues described below." The letter then listed the

following alleged irregularities:

1. The Deed of Trust's naming of MERS as Beneficiary is contrary to . . . RCW 61.24.005(2) and is therefore an unenforceable and possibly illegal contract. An unenforceable and possibly illegal contract . . . is not adequate to initiate or complete a nonjudicial trustee sale under the Washington Deed of Trust Act RCW 61.24 et seq. . . .

2. There have been multiple parties . . . who have been named or claimed to possess or transfer/assign various interests in the . . . Deed of Trust and/or The Note.

    a. **Homecomings Financial, LLC**; This party was the originally named Lender on The Note and the Deed of Trust; however the branch location listed on the Deed of Trust was not a licensed Branch with the Washington State Department of Financial Institutions at the time of the origination of The Note and Deed of Trust . . . .

    b. **Mortgage Electronic Registration Systems, Inc. ("MERS")**; this entity has been found by the Washington Supreme Court in **Bain v. Metropolitan Mortg. Group, Inc.**, *285 P.3d 34, 175 Wn.2d 83, 89, 95-97,110-112 (Wash. 2012)* not to be a lawful Beneficiary of Deeds of Trust in Washington State and as a result [it] possesses no beneficial interest to assign to any other parties, such as the party identified in Item (d) below.

    c. **Deutsche Bank Trust Company Americas, as Trustee** . . . ; Based upon . . . preliminary research . . . the RALI SERIES 2007-QOI TRUST . . . has represented to its investors that the above referenced Deed of Trust and The Note are a part of the corpus of the trust. However, . . . there are required parties who do not exist in the chain of transfers of the Deed of Trust and The Note. As a

> result [Big Blue] disputes any claim that the 2007-QOI Trust is the Owner, Note Holder, or Beneficiary of the Deed of Trust. . . .

> d. **Aurora Bank, FSB**; this party has been identified as an assignee that MERS purportedly assigned the *"Deed of Trust"* . . .; however . . . MERS is NOT a lawful beneficiary in Washington State and therefore cannot assign . . . its *"beneficial interest"* to Aurora . . . .

> . . . Aurora Bank, FSB [therefore] did not possess the authority to appoint [Quality as successor trustee]. Nor did [it] possess any *"beneficial interest"* to assign to Nationstar . . . .

> As Aurora . . . possessed no interest . . . to appoint [Quality] as successor trustee, [Quality] did not possess adequate authority to initiate the March 1st, 2013 Trustee Sale . . . nor did Nationstar . . . receive any interests or authority adequate to instruct [Quality] to initiate the currently scheduled 10-18-13 Trustee Sale from Aurora . . . .

> e. **Nationstar Mortgage, LLC.** . . . [A]s further described above, Aurora Bank . . . did not acquire any valid *"beneficial interests"* or authority [from] MERS . . . . [Therefore,] Nationstar . . . received no *"beneficial interests"* or authority from Aurora Bank . . . .

Based on these allegations, Big Blue asserted that Quality could not rely on any beneficiary declaration. It claimed that "[t]o continue forward with the 10-18-13 Trustee [sale] without [investigating] would be the opposite of acting in good faith" and that Quality should provide proof that it had been validly appointed and instructed to conduct a sale by the actual beneficiary of the deed of trust.

Nationstar responded to Big Blue's letter with a letter dated September 24, 2013. This letter identified Nationstar as the current servicer of the loan and Deutsche Bank as the loan's owner. It also stated,

> Please note that Nationstar is the servicer of the loan; and therefore, will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include, but are not limited to the following:
>
> • Payment assistance and modifications
> • Payment posting
> • Validation of the debt
> • Foreclosure proceedings
> • Payment adjustments
>
> As such, please direct any communication related to these matters to Nationstar.

On October 10, 2013, eight days before the pending trustee sale, Big Blue filed this lawsuit against Quality, its sister company, and the law firm of McCarthy & Holthus LLP. The complaint alleged violations of the DTA and CPA and sought damages and declaratory and/or injunctive relief. The complaint requested an order declaring MERS an unlawful beneficiary and further declaring void or voidable MERS' assignment to Aurora, Aurora's appointment of Quality as trustee, and Aurora's assignment of the deed of trust to Nationstar.

In December 2013, McCarthy & Holthus moved to dismiss the claims against it under CR 12(b)(6). The court denied the motion "because the pleading did state a claim . . . that the law firm owned, managed or controlled the foreclosure trustee, and acted in concert with the foreclosure trustee."

In March 2014, McCarthy & Holthus moved for summary judgment. Big Blue opposed the motion and asked for a continuance to complete discovery. The court denied the continuance and granted summary judgment dismissing McCarthy & Holthus.

In August 2014, the remaining defendants moved for summary judgment. At the start of the hearing on the motion, the court stated, "[M]y hope is that we'll talk about whether or not Big Blue . . . suffered some type of injury. And if so, if there's anything that [Quality] did that caused that injury." Defendants' counsel argued there was no evidence of injury to Big Blue. Counsel noted that Big Blue bought the property in foreclosure status, the trustee issued no notices of sale after Big Blue purchased the property, and the trustee canceled the pending sale. Counsel asserted that any injury suffered by Big Blue was traceable to its purchase of a property in foreclosure status, not to the actions of defendants.

With respect to Riggle's legal claims against defendants that Big Blue claimed it purchased, defendants' counsel argued the record included no evidence that the defendants' actions caused Riggle any injury. Big Blue countered that both Riggle and Big Blue were injured by wrongful foreclosure and a cloud on their title. In granting summary judgment, the court stated in pertinent part,

> [T]he Court concludes that the plaintiff lacks standing to pursue claims—either its own or those that David Riggle or the bankruptcy

trustee for the Riggle estate may have had—under either the Deed of Trust Act or the Consumer Protection Act. There is a complete absence of evidence that any of these entities suffered an injury or that a defendant was the cause of such injury. The DOTA is intended to protect "borrowers" and the CPA to protect "consumers;" the plaintiff is neither of these. Finally, regardless of plaintiff's allegations of irregularities in the appointment of a successor trustee, at present, there is no pending sale to be enjoined.

Big Blue appealed. On October 16, 2015, while this appeal was pending, the property was sold at a trustee's sale to Deutsche Bank.

## STANDARD OF REVIEW

We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[3] We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4] Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[5] Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact.[6] Nor may the nonmoving party rely on speculation or

---

[3] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).
[4] Lybbert, 141 Wn.2d at 34.
[5] Lybbert, 141 Wn.2d at 34.
[6] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

argumentative assertions that unresolved factual issues remain.[7] We may uphold a summary judgment on any ground supported by the record.[8]

We review a decision to deny a continuance for a manifest abuse of discretion.[9] "In deciding a motion to continue, the trial court takes into account a number of factors, including diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted."[10] To establish an abuse of discretion for denial of a continuance, an appellant must show that he or she has been prejudiced.[11] When, as here, a party seeks a continuance under CR 56(f), it must provide an affidavit stating what evidence it seeks and how this evidence will raise an issue of material fact precluding summary judgment.[12]

## ANALYSIS

Big Blue first contends the court abused its discretion in denying Big Blue's motion for a continuance to conduct further discovery about the relationship between Quality and its law firm, McCarthy & Holthus. We disagree.

---

[7] Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

[8] Rainier View Court Homeowners Ass'n v. Zenker, 157 Wn. App. 710, 723, 238 P.3d 1217 (2010).

[9] In re Dependency of V.R.R., 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006).

[10] V.R.R., 134 Wn. App. at 581.

[11] State v. Deskins, 180 Wn.2d 68, 82, 322 P.3d 780 (2014).

[12] Durand v. HIMC Corp., 151 Wn. App. 818, 828, 214 P.3d 189 (2009).

At the hearing on the motions for summary judgment, Big Blue's counsel claimed that she needed a continuance to explore the interrelationship of the law firm and Quality. She noted that the discovery cutoff was still six months away and that they were "still going through thousands of pages of discovery responses" and other information. In an affidavit, counsel recited the complaint's allegations and stated, "Plaintiff believes that there may be information from M&H that would affect the outcome of this CR 56 motion." Counsel did not specify what that evidence was.

Defendants' counsel noted in his briefing that the case had been open for almost a year. At the hearing, he pointed out that Big Blue had completed discovery on the other defendants during that time and that, in any event, there was "no legal mechanism by which they [could] reach the firm" and hold it liable for any actions of the trustee. In denying a continuance, the court stated,

> I think I'm starting to get a sense of the distinction here between the LLP on the one hand, and Mr. McCarthy and Mr. Holthus perhaps on the other hand. The named Defendant in this case, along with QLS, is the LLP of the law firm, which apparently has appeared as counsel for QLS repeatedly. I think that's a separate and distinct question from the assertion that maybe Mr. McCarthy and Mr. Holthus may have had some role in owning, operating, or having control over [Q]uality . . . .
> The motion [to dismiss the claims against the LLP] was properly noted . . . . There isn't any real opposition to it, other than the request for postponement of what I think is the inevitable conclusion, which is to dismiss the law firm from this action.
> . . . .
> There just does not seem to be the evidentiary basis at this point in support for the naming of the LLP, the law firm, as an entity,

having ownership, management or control over the foreclosure trustee. I simply don't see it as far as the available evidence at this point, nor does it seem that that is forthcoming, if the Court were to postpone the motion today. So I'll go ahead and sign the Order.

Big Blue fails to demonstrate that the court abused its discretion. Its briefing on appeal provides no meaningful analysis of the court's reasons for denying the continuance. And its counsel's affidavit supporting the requested continuance lacks an adequate description of the evidence Big Blue expected to discover and its materiality. Considering the relevant factors set forth above and on this briefing, we cannot say the court abused its discretion.

Big Blue also contends the court erred in dismissing its claims for damages under the DTA and CPA and for failing to grant it declaratory or injunctive relief. Again, we disagree.

### Violations of the Deeds of Trust Act / Declaratory and Injunctive Relief

An action for damages based on alleged violations of the DTA cannot be maintained in the absence of a foreclosure sale.[13] Because no sale had occurred at the time of summary judgment, the trial court properly dismissed Big Blue's claims under the DTA. And in light of the recent sale of the property, Big Blue's claims for declaratory and injunctive relief are moot.

---

[13] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 429, 334 P.3d 529 (2014).

## *Violations of the Consumer Protection Act*

Although Big Blue cannot bring a claim for damages under the DTA without a foreclosure sale, it may bring CPA claims for violations of the DTA.[14] To prevail on a CPA claim, the plaintiff must establish "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."[15] "[W]hether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law."[16]

Big Blue's complaint alleges unfair or deceptive acts arising from violations of the DTA, inaccuracies or misrepresentations in the note and deed of trust, the designation of MERS as the beneficiary in the deed of trust, the invalidity of MERS' subsequent assignment to Nationstar, the invalidity of Nationstar's appointment of Quality as trustee, and Quality's violation of its duty of good faith by failing to investigate these and other irregularities Big Blue brought to its attention in its September 2013 letter. Big Blue contends these unfair or deceptive acts injured its business or property because they had "negative ramifications on the reliability, insurability, and marketability" of the title.

---

[14] Lyons v. U.S. Bank NA, 181 Wn.2d 775, 784, 336 P.3d 1142 (2014); Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834, 355 P.3d 1100 (2015).

[15] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[16] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

It also claims it took "significant time away from its business pursuits, incurred investigative expenses, and . . . attorney fees" in order "to clear up the confusion" regarding which entity "was the actual Note Holder . . . and therefore possessed the ability to clear title to The Property." Big Blue also seeks to recover for injuries Riggle allegedly suffered from these acts before Big Blue purchased the property.

Big Blue has not demonstrated any issue of fact as to whether the alleged unfair or deceptive acts caused Riggle or Big Blue any injury. To prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."[17] Big Blue cannot dispute that Riggle failed to pay the note as required. Nothing in Big Blue's pleadings demonstrated an injury to Riggle's business or property caused by the alleged violations of the DTA or other irregularities. The record contains no declaration from Riggle or other evidence that he failed to make his payments because of the alleged unfair or deceptive acts. It contains no evidence that he was unable to determine whom he was supposed to make his payments to or that anything other than his financial straits caused his default and subsequent

---

[17] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 84, 170 P.3d 10 (2007).

bankruptcy. Big Blue thus failed to demonstrate a genuine issue of fact showing the alleged CPA violations caused any injury to Riggle.[18]

Nor has Big Blue demonstrated any issue of fact as to whether the alleged CPA violations caused Big Blue any injury after it purchased the property. Big Blue admits that it purchased the property for a nominal sum after all four foreclosure notices were issued. In a similar situation, an Oregon court held that an entity named Big Blue Capital Partners LLC "did not suffer an injury that is fairly traceable to the challenged actions of defendants" and "to the extent that [Big Blue] suffered an injury, it was due to [Big Blue's] own actions in purchasing the Property after non-judicial foreclosure proceedings had been commenced."[19] The same is true here.

Big Blue purchased the property knowing that Riggle had defaulted, that the trustee had recorded notices of foreclosure, and that Riggle valued the

---

[18] See, e.g., Babrauskas v. Paramount Equity Mortg., No. C13-0494 RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013) ("Any damage to plaintiff's credit, cloud on his title, or monetary effect of the threat of foreclosure cannot be laid at MERS' door. . . . Plaintiff has not alleged facts raising the plausible inference that, but for MERS' identification as the beneficiary on the deed of trust and its ineffective assignments of interest, plaintiff would not have suffered the adverse impacts of which he complains. Rather, plaintiff's failure to meet his debt obligations is the 'but for' cause of the default, the threat of foreclosure, any adverse impact on his credit, and the clouded title."); McCrorey v. Fed. Nat'l Mortg. Ass'n, No. C12-1630 RSL, 2013 WL 681208, at *4 (W.D. Wash. Feb. 25, 2013) (finding no injury under the CPA because "it was [plaintiffs'] failure to meet their debt obligations that led to a default, the destruction of credit, and the foreclosure").

[19] Big Blue Capital Partners, LLC v. Recontrust Co., No. 6:11-CV-06368-AA, 2012 WL 1605784, at *5 (D. Or. May 4, 2012).

property at roughly $100,000 less than the debt on the loan. Moreover, Big Blue's alleged settlement agreement with the bankruptcy trustee states that Big Blue had investigated, and was aware of, the alleged title and foreclosure irregularities when it purchased the property. That agreement also states that the price Big Blue paid took into account those irregularities as well as the anticipated costs of rectifying or clarifying them. Big Blue was plainly not a victim of unfair acts or deception. Any injury to Big Blue arising from these known facts was self-inflicted and does not support a CPA claim.[20]

Finally, Big Blue claims it was injured by the trustee's failure to investigate and clarify the uncertainties Big Blue identified in its September 2013 letter to Quality. A violation of a trustee's duty of good faith may be actionable as a violation of the CPA.[21] Although a trustee may rely on the representations in a beneficiary declaration and "does not need to summarily accept a borrower's side of the story or instantly submit to a borrower's demands," it has a duty to investigate if "there is an indication that the beneficiary declaration might be ineffective" or it knows about "conflicting information regarding [its] right to initiate foreclosure."[22]

---

[20] Big Blue Capital, 2012 WL 1605784, at *5.
[21] Lyons, 181 Wn.2d at 786-89.
[22] Lyons, 181 Wn.2d at 787.

Assuming Big Blue's September 2013 letter triggered a duty to investigate, Big Blue has not identified any genuine issue of fact as to whether the trustee breached that duty. Three weeks after Big Blue's letter, Nationstar responded and informed Big Blue that it was the current servicer of the loan and that Deutsche Bank was the loan's owner. Because the deed of trust provided that loan payments could be made to the loan servicer and because Nationstar's letter stated that it was the entity responsible for "Payment assistance and modifications," "Validation of the debt," "Foreclosure proceedings," and "Payment adjustments," Big Blue had the information it needed to proceed with any negotiations about the debt or other efforts to clear title. In addition, Quality's cancellation of the sale in response to Big Blue's letter further demonstrated its good faith.

And even if Quality breached its duty to investigate, Big Blue has not shown any issue of fact as to whether the breach injured Big Blue. As noted above, Big Blue promptly received information from Nationstar that allowed it to move forward with its plan to clear title. Cancellation of the sale also removed the most immediate impediment to Big Blue's plans and afforded it continued use of the property. To the extent uncertainties remained after Nationstar's response, Big Blue was aware of these uncertainties when it purchased the property and could have attempted to resolve them by contacting Nationstar. Big

No. 72623-4-I / 18

Blue chose to file suit instead. Filing a CPA action does not, however, show injury under the CPA.[23]

Because Big Blue has not prevailed on appeal, it is not entitled to attorney fees.

Affirmed.

_Leach, J._

_Cox, J._                              _Becker, J._

---

[23] Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wn. App. 553, 564, 825 P.2d 714 (1992) ("having to prosecute" a CPA claim "is insufficient to show injury").