# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 3 0 2014

~~Madsen C. J.~~
CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on Oct. 30, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WINNIE LYONS, a single person, | ) | No. 89132-0 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| U.S. BANK NATIONAL ASSOCIATION, as trustee for Stanwich Mortgage Loan Trust Series 2012-3, by Carrington Mortgage Services, LLC; WELLS FARGO BANK, N.A., a chartered national bank; Wells Fargo Bank, N.A., as servicer, | ) ) ) ) ) ) ) ) ) | Filed      OCT 3 0 2014 |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NORTHWEST TRUSTEE SERVICES, INC., as trustee, | ) ) ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

FAIRHURST, J.—Winnie Lyons brought suit against Northwest Trustee
Services Inc. (NWTS) based on its conduct as the trustee during foreclosure. Lyons

alleged violations of the deed of trust act (DTA), chapter 61.24 RCW; violations of the Consumer Protection Act (CPA), chapter 19.86 RCW; and the intentional infliction of emotional distress. First, this case asks whether a plaintiff can even bring a cause of action for damages under the DTA or the CPA in the absence of an actual sale of the property. It then asks whether the trial court erred by granting summary judgment in favor of NWTS on all three claims. We affirm the trial court's grant of summary judgment on the DTA and the intentional infliction of emotional distress claims, but we reverse and remand the CPA claim to the trial court.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2007, Winnie Lyons signed a promissory note secured by a deed of trust encumbering real property in Burien, Washington. The Burien property is Lyons' primary residence and also the location from which she operates an adult family home (AFH),[1] her sole source of income. Wells Fargo Bank NA was identified on the deed of trust as the lender and beneficiary. Northwest Trustee Services LLC was identified as the trustee. The deed of trust was recorded on August 31, 2007 in King County. In early 2009, Northwest Trustee Services LLC became

---

[1] In her briefing, Lyons says she lives at the Burien address, but her declaration to the trial court said she lived in Kent. In her reply brief she clarifies that she inadvertently signed the declaration with this error. Reply Br. of Lyons at 2. At all times since she obtained the mortgage she has resided and operated the AFH at the property in Burien. *Id.*

NWTS and Wells Fargo recorded an appointment of successor trustee naming NWTS as the successor trustee.

In October 2009, an employee of Wells Fargo executed a beneficiary declaration identifying Wells Fargo as trustee for Soundview Home Loan Trust 2006. This beneficiary declaration asserted, "Wells Fargo Bank, NA, as Trustee for Soundview Home Loan Trust 2006-WFI is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." Clerk's Papers (CP) at 120. In June 2010, another beneficiary declaration was executed by an employee of Wells Fargo. It read, "Wells Fargo Bank, NA, is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." CP at 118.

In October 2011, Lyons filed bankruptcy, and in January 2012 she applied for a loan modification with Wells Fargo. On March 30, 2012, while Lyons was waiting for a response regarding her application for a modification, she received a notice of trustee's sale from NWTS informing her that her property was scheduled to be sold on July 6, 2012. On April 5, 2012, Wells Fargo told Lyons' attorney that the in-house modification had been approved. On April 19, 2012, Lyons received the letter confirming the modification. The terms required her to pay $10,000 by May 1, 2012.

Wells Fargo informed Lyons they would discontinue the sale upon receipt of this payment. She paid this amount to Wells Fargo as required.

However, on March 29, 2012, Wells Fargo had sold Lyons' loan to U.S. Bank National Association as trustee for Stanwich Mortgage Loan Trust Series 2012-3 with Carrington Mortgage Services LLC as the new servicer of the loan. This was to become effective on May 1, 2012. NWTS received notice of the sale and service release on April 12, 2012. Lyons received notice of this sale on April 26, 2012.

On April 26, 2012, Lyons' attorney spoke with a representative of NWTS to inform it that Wells Fargo no longer had any beneficial interest in the loan after the sale, that Carrington was the new servicer of the loan, and that Lyons had received a loan modification so she was no longer in default. On June 11, 2012, Lyons' attorney again called NWTS to inform them of the loan modification and the sale of the loan. A NWTS employee informed her that Carrington had directed NWTS to continue with the foreclosure sale as scheduled. On June 14, 2012, Lyons' attorney called Carrington and an employee indicated that Carrington did not show the property in foreclosure status. Another employee further indicated that Carrington had not told NWTS to go forward with the sale. Lyons' attorney then sent a cease and desist letter to NWTS and Carrington.

On June 18, 2012, Lyons' attorney followed up with NWTS. NWTS acknowledged receipt and informed her the sale was still on but that the matter had

been referred to an attorney for NWTS. On June 19, 2012, the attorney for NWTS informed Lyons' attorney that he needed to do his due diligence. Lyons' attorney again spoke with NWTS' attorney on June 21, 2012. NWTS' attorney refused to discontinue the sale, and Lyons' attorney filed the complaint. At the end of the day on June 21, 2012, NWTS executed and recorded a notice of discontinuance of the trustee's sale.[2]

Lyons alleges that this situation has had serious emotional and economic impacts on her. In March 2012, Lyons arrived home to be handed the notice of trustee's sale by a family member of one of her full pay AFH clients. In addition to the sense of humiliation Lyons felt, this client moved out approximately two weeks later because of concern that Lyons was going to lose her business and her home. Before leaving, this client shared her belief that the home was going to be foreclosed on with other AFH clients, some of whom also moved shortly thereafter. The AFH business is her primary source of income, and the loss of clients directly impacted her financially. In her declaration, Lyons asserts that thereafter she struggled with day-to-day tasks and felt hopeless. She began counseling with the pastor of her church. Her pastor said that previously Lyons was a very positive woman with a drive to succeed, but since the pending foreclosure she was fearful and depressed.

---

[2]NWTS maintains that it did not discontinue the trustee's sale because the complaint was filed, but that the dates are coincidental since NWTS was not served with the complaint until June 26, 2012.

Lyons asserts that she experienced constant nausea from the stress and continuously worried about losing her business and the subsequent homelessness of herself, her son, and the elderly clients she cared for.

NWTS moved for summary judgment. After argument, the court granted the motion for summary judgment as to all claims against NWTS. Subsequently, Lyons and the remaining defendants (Stanwich, Carrington, and Wells Fargo) entered a stipulated order of dismissal. Lyons' motion for reconsideration of the order of summary judgment was denied. We granted Lyons' petition for direct review.

## II. ISSUES PRESENTED

1.     If a nonjudicial foreclosure sale does not happen, can a plaintiff bring a claim for damages under the DTA or the CPA?

2.     Was the grant of summary judgment against Lyons on her CPA claim improper?

3.     Was the grant of summary judgment against Lyons on her intentional infliction of emotional distress claim improper?

## III. ANALYSIS

Lyons alleges a range of errors by the trial court that resulted from it granting summary judgment in favor of NWTS. We review questions of law and summary judgment rulings de novo. *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004); *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). "In reviewing an order of summary judgment, we engage in the same inquiry as a trial court." *Reid*, 136 Wn.2d at 201. We interpret all the facts and inferences therefrom in favor of

Lyons, the nonmoving party. *Id.* Summary judgment is appropriate only if the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Lyons alleges three causes of action against NWTS—one under the DTA, one under the CPA, and one for intentional infliction of emotional distress. All of these claims are supported by the same underlying conduct that Lyons alleges involves a violation of RCW 61.24.030(7) in relation to the beneficiary declaration and a breach of the duty of good faith under RCW 61.24.010(4). The trial court focused on the issue of whether Lyons could bring a claim for damages under the DTA in the absence of a trustee's sale, and there was almost no discussion of the CPA or the intentional infliction of emotional distress claims during argument on the summary judgment motion. Yet, the court granted NWTS' motion on all of these claims. We begin by addressing the causes of action under the DTA and the CPA, including Lyons' particular contentions regarding the beneficiary declaration and breach of the duty of good faith. We then address the cause of action for intentional infliction of emotional distress.

A.    Without a nonjudicial foreclosure sale, a party may not bring a claim for damages under the DTA, but they can bring a claim under the CPA

Recently we decided *Frias v. Asset Foreclosure Services, Inc.*, ___ Wn.2d ___, 334 P.3d 529 (2014). *Frias* involved two certified questions from the federal district court regarding whether a plaintiff could bring a claim for damages under

the DTA or the CPA in the absence of a foreclosure sale and what principles would govern each claim. This court carefully considered the language of the statute, the intended beneficiaries of the statute, the explicit and implicit legislative intent, and the purposes of the statute. The court concluded:

> We hold that the DTA does not create an independent cause of action for monetary damages based on alleged violations of its provisions where no foreclosure sale has been completed. . . . We further hold that under appropriate factual circumstances, DTA violations may be actionable under the CPA, even where no foreclosure sale has been completed. . . . [T]he same principles that govern CPA claims generally apply to CPA claims based on alleged DTA violations.

334 P.3d at 531. Without the sale of the property, damages are not recoverable under the DTA, but a CPA claim may be maintained regardless of the status of the property. *Frias* clearly resolves the first issue in this case. Lyons cannot bring a claim for damages under the DTA in the absence of a sale, but she may bring a claim for similar actions under the CPA.

B.   There were material issues of fact for trial regarding whether NWTS violated provisions of the DTA, which could be used to support Lyons' CPA claim, so granting summary judgment to NWTS on Lyons' CPA claim was improper

A CPA claim is a preexisting statutory cause of action with established elements. *Id.* at 537. A claim under the CPA based on violations of the DTA must meet the same requirements applicable to any other CPA claim.[3] The availability of

---

[3]The law regarding CPA causes of action is fairly clear and settled. A cause of action is available if the claim satisfies five elements: "'(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her

redress for wrongs during nonjudicial foreclosure under the CPA is well supported in our case law. *Id.*; *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 119, 285 P.3d 34 (2012) (a plaintiff may bring a claim under the CPA arguing the facts specific to the case); *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn. App. 294, 320, 308 P.3d 716 (2013) (actions taken during the nonjudicial foreclosure process were sufficient to support all five elements of a CPA claim and survive pretrial dismissal); *Vawter v. Quality Loan Serv. Corp. of Wash.*, 707 F. Supp. 2d 1115, 1129-30 (W.D. Wash. 2010) (court discussed the five elements for a CPA claim and considered the factual allegations supporting Vawter's DTA claim to support the CPA claim as well); *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179 (2013) (property was sold in this case, but court discussed action amounting to CPA claims in depth, focusing on acts of defendants, not the fact the property was sold). The absence of a completed sale of the property does not affect the availability of this cause of action. Whether a plaintiff will prevail on a CPA claim is a case by case determination of whether the plaintiff can satisfy the requisite elements.

The main question raised by the parties surrounds whether the alleged actions of NWTS amount to unfair or deceptive practices under the CPA.[4] The allegedly

---

business or property; (5) causation.'" *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (alteration in original) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). The CPA "shall be liberally construed" to further its purposes. RCW 19.86.920.

[4]Much of the briefing also questions whether Lyons can show an injury by NWTS. Although emotional distress, embarrassment, and inconvenience are excluded, business and

improper acts of NWTS are intertwined but can be generally categorized as violations of two DTA statutes—violation of the duty of good faith under RCW 61.24.010(4) and noncompliance with RCW 61.24.030(7)(a), which instructs that a trustee must have proof the beneficiary is the owner prior to initiating a trustee's sale.[5] Whether undisputed conduct is unfair or deceptive is a question of law, not a question of fact. *See, e.g., Panag*, 166 Wn.2d at 47 ("Whether a particular act or practice is 'unfair or deceptive' is a question of law." (quoting *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997))).

CPA jurisprudence is well settled, and determining what an unfair act is can be done by looking to precedent. The DTA sets up a three party system for mortgages where an independent trustee acts as the impartial party between a lender and a borrower instead of the court. *Klem*, 176 Wn.2d at 790. If Lyons' alleged violations are true, NWTS' actions would likely be considered unfair acts, but questions of fact remain as to whether NWTS' actions amounted to such violations. These material

---

property injuries compensable under the CPA are relatively expansive. *Frias*, 334 P.3d at 538. The injury element does not require that the homeowner lose their property in order to bring a claim under the CPA. *Id.* "[T]he injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009) (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). Lyons has alleged that her AFH business was directly impacted by the actions of NWTS. These allegations are sufficient to satisfy the injury element of a CPA claim for the purposes of summary judgment.

[5] In RCW 61.24.135, the legislature listed some per se violations of the DTA that automatically satisfy this element of a CPA claim. The acts complained of by Lyons do not violate this section of the DTA and thus, even though they might violate a different statute, are not per se violations. Lyons must show NWTS' actions were unfair or deceptive.

questions of fact must be resolved by a fact finder, so the claim should have survived summary judgment.

    1.    There were material issues of fact regarding whether NWTS did not act in good faith

RCW 61.24.010(4) imposes a duty of good faith on the trustee toward the borrower, beneficiary, and grantor. "[U]nder our statutory system, a trustee is not merely an agent for the lender or the lender's successors. Trustees have obligations to all of the parties to the deed, including the homeowner." *Bain*, 175 Wn.2d at 93. This duty requires the trustee to remain impartial and protect the interests of all the parties. "[T]he trustee in a nonjudicial foreclosure action has been vested with incredible power. Concomitant with that power is an obligation to both sides to do more than merely follow an unread statute and the beneficiary's directions." *Klem*, 176 Wn.2d at 791. A foreclosure trustee must "adequately inform" itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a "cursory investigation" to adhere to its duty of good faith. *Walker*, 176 Wn. App. at 309-10. A trustee does not need to summarily accept a borrower's side of the story or instantly submit to a borrower's demands. But a trustee must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith. *See, e.g., Cox v. Helenius*, 103 Wn.2d 383, 388, 693 P.3d 683 (1985). A trustee's failure to act impartially between note holders and mortgagees, in

11

violation of the DTA, can support a claim for damages under the CPA. *Klem*, 176 Wn.2d at 792.

Lyons says that NWTS violated its duty to act in good faith by failing to act impartially toward her. Lyons points to various indicators that she believes demonstrates NWTS' lack of good faith:

> (1) NWTS knew that Ms. Lyons had filed bankruptcy in 2011 (2) NWTS knew that Ms. Lyons had engaged in a review for a loan modification (3) In the bankruptcy [matter], NWTS, sister company, RCO represented Wells Fargo's interest (4) Lyons' counsel on numerous occasions contacted NWTS to discuss either the loan modification or the fact Wells Fargo no longer had any beneficial interest (5) NWTS knew that Wells Fargo requested a service release and that NWTS needed to provide Wells Fargo with an invoice or NWTS would not be paid (6) NWTS provided Wells Fargo with that invoice on or about April 2012 (7) NWTS changed the scheduled foreclosure sale loan number when it knew about the service release to Carrington (8) NWTS, Nanci Lambert, indicated that Carrington instructed NWTS to continue with the scheduled foreclosure sale (9) Before a lawsuit was filed, several telephonic phone conversations took place (10) On or about June 14, 2012, NWTS received a cease and desist letter, coupled with proof of the loan modification.

Opening Br. of Lyons at 34-35 (footnotes omitted). Put simply, Lyons claims NWTS deferred to the course of action that Wells Fargo had previously initiated without giving any credence to what she, the borrower, was telling it about a change in the situation between the parties.

We find that Lyons has presented material issues of fact. The conflict over the actual beneficiary was brought to the attention of NWTS on April 26, 2012, but there is no evidence in the record that anyone at NWTS investigated this conflict until

12

their attorney informed Lyons' attorney it would do so on June 19, 2012.[6] It is a material issue of fact whether NWTS investigated the status of the loan and the proper beneficiary earlier than when it referred the matter to their attorney. If Lyons' allegations are true and NWTS knew about the conflicting information regarding their right to initiate foreclosure but did not look into this matter, there are issues regarding whether this indicates deferral to Wells Fargo and therefore lack of impartiality. These issues of fact regarding NWTS' actions must be resolved before a court can determine if they have violated the duty of good faith. Considering the evidence in the light most favorable to Lyons, this claim should have survived summary judgment.

>   2.    There were material issues of fact regarding whether the beneficiary declaration was proper and whether NWTS could rely on it

Lyons alleges multiple issues with the beneficiary declaration. Because of these issues, Lyons claims NWTS did not have proper proof that Wells Fargo was the owner of the note and could direct NWTS to foreclose. Thus, Lyons alleges that NWTS violated RCW 61.24.030(7)(a), which requires that "before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the

---

[6]The only possible evidence NWTS investigated is that NWTS told Lyons it had spoken with Carrington and Carrington had directed it to continue the sale. But, it is unclear whether NWTS actually did speak to Carrington since Carrington's records indicated that the property was not in foreclosure and Carrington denies ever instructing NWTS to continue with the sale.

13

deed of trust." The trial court determined there were no issues of material fact and granted summary judgment. We disagree and find that when considering the allegations in favor of Lyons, some material factual issues remain that necessitate the denial of summary judgment.

Lyons claims that the second beneficiary declaration was defective because the language did not prove Wells Fargo, the beneficiary, was the owner, as required by RCW 61.24.030(7)(a). *Bain* emphasized that the act requires a trustee to have proof that the beneficiary is the actual owner of the note to be foreclosed on. 175 Wn.2d at 102 (citing RCW 61.24.030(7)(a)), 111 ("If the original lender had sold the loan, [it] would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions."). Seeking to foreclose without being a holder of the applicable note in violation of the DTA is actionable in a claim for damages under the CPA. *Id.* at 115-20.

Although ownership can be proved in different ways, the statute itself suggests one way: "A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note . . . shall be sufficient proof as required under this subsection." RCW 61.24.030(7)(a). Typically, unless the trustee has violated a duty of good faith, it is entitled to rely on the beneficiary's declaration when initiating a trustee's sale. *See* RCW

61.24.030(7)(b). But if there is an indication that the beneficiary declaration might be ineffective, a trustee should verify its veracity before initiating a trustee's sale to comply with its statutory duty.

The United States District Court for the Western District of Washington recently decided *Beaton v. JPMorgan Chase Bank N.A.*, No. C11-0872 RAJ, 2013 WL 1282225 (Mar. 26, 2013) (court order), where it interpreted a beneficiary declaration similar to the declaration in this case. It read, "'JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation.'" *Id.* at *5. The court held that this provision indicated that "Chase could be a nonholder in possession or a person not in possession who is entitled to enforce the instrument neither of which is proof that 'the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust.'" *Id.* (citation omitted) (quoting RCW 61.24.030(7)(a)). Because DTA provisions must be strictly complied with, the ambiguity regarding whether the beneficiary declaration satisfied the statutory requirement created enough of a question of whether there was a violation of the DTA to survive summary judgment in that case. *Id.* Lyons encourages the court to adopt the reasoning in *Beaton*.

NWTS argues that *Beaton* is wrongly decided and that the language of the beneficiary declaration, in conjunction with the statutory requirements of the DTA and case law, is valid. Notably, NWTS points out that a beneficiary declaration is not the exclusive manner in which a trustee can satisfy RCW 61.24.030(7). This declaration uses the phrase "or has requisite authority," and only a holder has the requisite authority to act as a beneficiary under *Bain*. CP at 118. Since requisite authority under the DTA and Washington case law is strictly limited to a holder status, NWTS argues both clauses in the beneficiary declaration provide proof that Wells Fargo was a holder for the purposes of RCW 61.24.030(7)(a).

Because DTA provisions should be strictly construed, we find, consistent with *Beaton*, that the declaration at issue here does not comply with RCW 61.24.030(7)(a). On its face, it is ambiguous whether the declaration proves Wells Fargo is the holder or whether Wells Fargo is a nonholder in possession or person not in possession who is entitled to enforce the provision under RCW 62A.3-301. But NWTS, as trustee, can still prove that Wells Fargo was the owner of the note in a way other than through the beneficiary declaration referenced in RCW 61.24.030(7)(a). Thus, there remains a material issue of fact as to whether Wells Fargo was the owner prior to initiating the trustee's sale. NWTS will need to furnish that proof but may not just rely on this ambiguous declaration.

Additionally, Lyons claims the second beneficiary declaration was never proper because of the existence of the first beneficiary declaration. The first declaration identified Wells Fargo as trustee for Soundview, yet less than a year later Wells Fargo asserts that it is the holder. It is not entirely clear how Wells Fargo could give its interest to Soundview and then give it back to itself eight months later. Material questions of fact remain as to whether the second beneficiary declaration was valid and whether NWTS should have questioned its efficacy in light of the prior beneficiary declaration. Taking the facts in a light most favorable to Lyons, summary judgment was inappropriate and a cause of action under the CPA could be supported.

C.    No issues of fact remain for the claim of intentional infliction of emotional distress, so summary judgment was proper

Lyons also alleges a claim for the tort of outrage, otherwise known as intentional infliction of emotional distress. "The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989); *see Robel v. Roundup Corp.*, 148 Wn.2d 35, 51, 59

P.3d 611 (2002). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Robel*, 148 Wn.2d at 51 (emphasis omitted) (internal quotation marks omitted) (quoting *Dicomes*, 113 Wn.2d at 630).

Conduct during foreclosure could support a claim for intentional infliction of emotional distress, but it must satisfy the high burden applicable to these claims. RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965); *compare Montgomery v. SOMA Fin. Corp.*, No. C13-360 RAJ, 2014 WL 2048183, at *7 (W.D. Wash. May 19, 2014) (court order) (plaintiffs alleged that the bank induced them to default, then foreclosed on the property using a perjured declaration; the court found that reasonable minds could differ as to whether this egregious conduct was sufficiently outrageous and so the claim survived summary judgment), *with Vawter*, 707 F. Supp. 2d at 1128 ("Chase's and MERS's actions in connection with the nonjudicial foreclosure process, as alleged by the Vawters, may be problematic, troubling, or even deplorable" but is insufficiently outrageous for an intentional infliction of emotional distress claim), *and McGinley v. Am. Home Mortg. Serv., Inc.*, No. 2:10-CV-01157 RJB, 2010 WL 4065826, at *11 (W.D. Wash. Oct. 15, 2010) (court order) (claim resting on alleged nondisclosures associated with loan refinance, terms of the loan, and subsequent nonjudicial foreclosure proceedings was insufficiently

outrageous to survive summary judgment), *and Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1046 (2011) ("plaintiffs essentially allege that the lenders offered them loans that the lenders knew they could not repay; this is not inherently 'extreme and outrageous'"), *and Wells v. Chase Home Fin., LLC*, No. C10-5001RJB, 2010 WL 4858252, at *8 (W.D. Wash. Nov. 19, 2010) (court order).

To support her claim for intentional infliction of emotional distress, Lyons relies on the same factual allegations above. She claims that the conduct of NWTS in not confirming the proper beneficiary and in not suspending the trustee's sale when she contacted them was so outrageous as to go beyond all bounds of decency. But these allegations are not so outrageous that they shock the conscience or go beyond all sense of decency. While perhaps the actions might have violated the DTA and could support a claim under the CPA, the acts are not sufficiently outrageous to support a claim for outrage. We affirm the trial court's grant of summary judgment on the intentional infliction of emotional distress claim.

## IV.   CONCLUSION

If a trustee's sale has not occurred, an allegedly wronged homeowner cannot bring a damages claim under the DTA. However even if a trustee's sale has not occurred, an allegedly wronged homeowner can bring a claim for damages under the CPA. Material issues of fact remain as to whether NWTS violated the CPA by not acting in good faith or by improperly relying on a questionable beneficiary

declaration. We affirm the court's grant of summary judgment in favor of NWTS for the DTA and intentional infliction of emotional distress claims. We reverse the grant of summary judgment on the CPA claim and remand to the trial court.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

González, J.

Owens, J.

Gordon McCloud, J.

Stephens, J.

Yu, J.