# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DANIEL J. WAGNER and ALICE WAGNER, | No. 47484-1-II |
| Appellants, | |
| v. | |
| EMC MORTGAGE, LLC f/k/a EMC MORTGAGE CORPORATION; ACQURA; VANTIUM CAPITAL, INC.; J.P. MORGAN CHASE BANK, N.A.; J.P. MORGAN MORTGAGE ACQUISITION CORP.; KAREN L. GIBBON, P.S. and DOE Defendants 1 – 20. | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Daniel and Alice Wagner appeal the superior court's order granting

summary judgment dismissal of their claims against EMC Mortgage Corporation (EMC) and other

lender defendants[1] who were involved in an uncompleted nonjudicial foreclosure proceeding

against their property. We hold that because there were no genuine issues of material fact as to

EMC's status as the actual noteholder and the lawful beneficiary, the superior court properly

granted summary judgment and dismissal of the Wagners's claims. Because EMC's status as a

---

[1] The other lender defendants are J.P. Morgan Mortgage Acquisition Corp., a parent company of Chase Bank, ClearSpring Loan Services Inc. f/k/a Vantium Capital Inc., f/d/b/a Acqura Loan Services, and Karen Gibbon, P.S., successor trustee. The lender defendants are collectively referred to as EMC unless otherwise indicated.

noteholder is dispositive as to the remaining issues, we decline to review the Wagners's remaining arguments. We affirm.

FACTS

I. BACKGROUND FACTS

A. WAGNERS'S PROMISSORY NOTE, AND ENDORSEMENT AND ASSIGNMENT TO EMC

In March 2005, the Wagners executed a promissory note (Note) in favor of Wells Fargo Bank N.A. to purchase property in Sumner. A deed of trust on the Sumner property, which Wells Fargo recorded in March 2005, secured the Wagners's Note.

Subsequently, Wells Fargo indorsed the Note as payable to EMC then executed and recorded a corresponding assignment of the deed of trust. In 2006, the Wagners defaulted on their loan payments. After EMC initiated nonjudicial foreclosure proceedings in 2008, the Wagners contacted EMC and established a repayment plan. The Wagners's loan was not modified. The Wagners defaulted on their payment plan when they failed to make the required $1,200 balloon payment. After the Wagners's default on the repayment plan, EMC resumed nonjudicial foreclosure proceedings in June 2009.

B. WAGNERS'S BANKRUPTCY FILINGS

The Wagners filed for chapter 13 bankruptcy to stop the trustee's sale of their home set for September 2009. EMC filed a proof of claim in January 2010, asserting its rights as a creditor and the owner and holder of the Wagners's Note. The Wagners filed an objection to EMC's proof of claim based on the fact that EMC had filed different copies of the Note, which they alleged called into doubt EMC's status as a creditor and owner of the Note. EMC responded to the Wagners's objection, explaining that an old copy of the Note was attached to the original proof of claim and

that an amended proof of claim was filed and supported by a newer, indorsed copy of the Note and the filed deed of trust. The bankruptcy court denied the Wagners's objection to EMC's claim "for the reasons stated in the Response to Objection to Claim and Declaration in Support of Response to Objection to Claim." Clerk's Papers (CP) at 686. In 2011, the Wagners's chapter 13 bankruptcy was dismissed based on their failure to pay the arrears on the loan.

In November 2012, the Wagners filed for chapter 7 bankruptcy which temporarily stayed the pending nonjudicial foreclosure sale. In their signed bankruptcy schedules, the Wagners disclosed that the property was subject to a $160,000 secured claim. The bankruptcy court granted the Wagners a discharge in March 2013.

## C. INEFFECTIVE ASSIGNMENT TO CHASE AND UNATTACHED ALLONGE

In May 2009, EMC executed an "Assignment of Deed of Trust" to Chase Bank which was done in error and never recorded. CP at 1320-21. EMC also created an allonge,[2] but did not affix the allonge to the Wagners's original Note. Chase disclaimed any ownership interest because the assignment was not operative and no assignment to Chase had actually occurred.

## D. EMC'S APPOINTMENT OF ACQURA LOAN SERVICES AS SERVICER AND AGENT

During the 2010 bankruptcy proceedings, the Wagners received a "Notice of Assignment, Sale or Transfer of Servicing Rights" informing them that Acqura Loan Services (Acqura) would

---

[2] An "allonge" is a paper attached to a negotiable instruction for purposes of receiving further indorsements. BLACK'S LAW DICTIONARY 88 (9th ed. 2009). A "blank indorsement" is an indorsement that does not identify a person to whom the instruction is payable. RCW 62A.3-205(a)-(b).

be servicing their loan. CP at 79. The notice informed the Wagners that the only term or condition of the mortgage instruments affected by the notice related to the servicing of their loan.

E. 2012 FORECLOSURE FAIRNESS ACT MEDIATION

In early 2012, the Wagners received a notice of default identifying EMC as the beneficiary of the Note and Acqura as the loan servicer. The Wagners requested mediation under the 2012 Foreclosure Fairness Act (FFA).[3] Acqura, as EMC's appointed agent, had the authority to "fully settle, compromise, or otherwise reach resolution" with the Wagners during mediation. CP at 1091.

During document exchange in mediation, the documents showing the unrecorded assignment to Chase and allonge were disclosed to the Wagners. EMC also provided a "Declaration of Ownership of Note" signed by Vivian Forr, an Acqura employee. CP at 158. Her declaration stated,

> The undersigned beneficiary or agent for the beneficiary declares under penalty of perjury under the laws of the State of Washington, that the following is true and correct:
>
> EMC Mortgage LLC (FKA EMC Mortgage Corporation) ("Secured Creditor[")]) is the current owner and/or the actual holder of the promissory note dated March 14, 2005 executed by Daniel J. Wagner and Alice L. Wagner, Husband and Wife, (the borrower) in favor of **WELLS FARGO BANK, N.A.** in the principal sum of $162,400.00.

CP at 158.

---

[3] Ch. 61.24 RCW.

Acqura offered the Wagners a loan modification, which would have restructured the loan, but the Wagners declined. The mediator certified that the parties in mediation acted in good faith. The record does not show that the Wagners challenged the mediator's findings.

F. 2012 AND 2013 NONJUDICIAL FORECLOSURE PROCEEDINGS

EMC appointed Karen L. Gibbon as successor trustee in June 2012. In August 2012, after the mediator's certification, Gibbon issued a notice of default identifying EMC as the owner of the Note. Gibbon also issued and recorded a "Notice of Trustee's Sale." CP at 53. The nonjudicial foreclosure sale was scheduled for November 30, 2012.

The Wagners filed their complaint on February 7, 2013, and moved for a temporary restraining order to prevent the scheduled nonjudicial foreclosure sale. The sale was rescheduled several times. On April 11, the Wagners filed a motion for preliminary injunction on the sale of the property. The foreclosure sale did not take place.

## II. PROCEDURAL FACTS

A. THE WAGNERS'S COMPLAINT

The Wagners alleged two causes of action against EMC and the other lender defendants. The Wagners alleged that the defendants (1) violated the Consumer Protection Act (CPA)[4] based on "misrepresentations about the ownership of the Promissory Note and the 'beneficiary'" in violation of the Deed of Trust Act (DTA)[5] and (2) made "numerous intentional and/or [negligent]

---

[4] Ch. 19.86 RCW.

[5] *See* ch. 61.24 RCW.

misrepresentations" about the identity of the noteholder, their relationships with the Wagners's loan, and the legality of the nonjudicial foreclosure. CP at 19-21.

B. DISCOVERY ON EMC

Chase served requests for admission on EMC related to ownership of the Note. EMC answered as follows:

> REQUEST FOR ADMISSION NO. 1: Admit that [EMC is] in possession of the original Note.
>
> ANSWER: Admit.
>
> REQUEST FOR ADMISSION NO. 2: Admit that the Note was transferred to [EMC] by Wells Fargo Bank, N.A.
>
> ANSWER: Admit.
>
> REQUEST FOR ADMISSION NO. 3: Admit that at all times after the Note was transferred to [EMC] by Wells Fargo Bank, N.A., [EMC has] remained in possession of the Note.
>
> ANSWER: Admit.

CP at 592-93.

C. SUMMARY JUDGMENT MOTIONS

In March 2015, EMC and the other lender defendants filed motions for summary judgment. They argued that (1) the Wagners were judicially estopped from challenging whether EMC was the noteholder, (2) the Wagners failed to provide evidence that they were provided with false information about the identity of the noteholder or that there was any false information that they relied upon, and (3) the Wagners failed to prove any injury or causation related to their CPA claim.

The superior court ruled that (1) EMC was the holder of the Note, (2) the unrecorded assignment and unattached allonge were ineffective and the issue had been previously adjudicated in bankruptcy court, and (3) the Wagners failed to present evidence to support a CPA or

misrepresentation claim. The superior court granted the motions for summary judgment and dismissed the Wagners's claims against EMC and the other lender defendants. The Wagners appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a superior court's grant of summary judgment de novo, performing the same inquiry as the superior court. *Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 649, 336 P.2d 1112 (2014). Summary judgment is proper when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one that affects the outcome of the litigation. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

We interpret all of the facts and draw all reasonable inferences from those facts in the favor of the nonmoving party. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). Summary judgment is appropriate if, after considering all of the evidence, reasonable persons could reach only one conclusion. *O.S.T. v. Regence Blueshield*, 181 Wn.2d 691, 703, 335 P.3d 416 (2014).

The burden of proof lies with the moving party to establish that there is no genuine issue of material fact, and once satisfied, the burden then shifts to the nonmoving party to present evidence demonstrating a material fact. *Walston v. Boeing Co.*, 181 Wn.2d 391, 395-96, 334 P.3d 519 (2014). The "nonmoving party may not rely on speculative or argumentative assertions that unresolved factual issues remain." *FDIC v. Uribe, Inc.*, 171 Wn. App. 683, 688, 287 P.3d 694

(2012). If the nonmoving party fails to present evidence of a material fact, summary judgment is appropriate. *Walston*, 181 Wn.2d at 396.

## II. CONSUMER PROTECTION ACT CLAIMS

The Wagners argue that EMC violated the CPA because there was "no credible evidence" that EMC was the noteholder when it initiated nonjudicial foreclosure in 2012 and 2013. They also argue that EMC was not the owner of the Note and thus could not properly foreclose. They further argue that the language in EMC's declaration is ambiguous citing *Lyons*[6] and *Trujillo*.[7] Because EMC presented undisputed evidence that it was the actual noteholder and the proper party to foreclose under the DTA, and because ownership of the Note is not required to initiate foreclosure proceedings, the Wagners's CPA claim fails because no unfair or deceptive act occurred.

A homeowner bringing a CPA claim based on alleged violations of the DTA must meet the same requirements as any other CPA claim. *Lyons*, 181 Wn.2d at 785. To prevail on a CPA claim, a plaintiff must establish all five elements: "(1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo v. Northwest Tr. Servs. Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015). Failure to establish any of the five elements is fatal to a plaintiff's CPA claim. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 793, 719 P.2d 531 (1986).

---

[6] *Lyons*, 181 Wn.2d at 775.

[7] *Trujillo v. Northwest Tr. Servs. Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015).

A homeowner may bring a CPA claim based upon a party's representation that it was a lawful beneficiary empowered to initiate a nonjudicial foreclosure on the homeowner's property. *Bain v. Metro. Mortg. Grp. Inc.*,175 Wn.2d 83, 89, 285 P.3d 34 (2012). Only the actual holder of the promissory note or other instrument may be the lawful beneficiary with the power to appoint a trustee and initiate a nonjudicial foreclosure on real property. *Bain*, 175 Wn.2d at 110. Thus, if the five CPA elements can be established, a homeowner may bring a CPA claim against a person claiming to be a lawful beneficiary. *Bain*, 175 Wn.2d at 110, 119; *see also Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 430-31, 334 P.3d 529 (2014).

Nonjudicial foreclosures are controlled by RCW 61.24.030(7), which states,

(a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

(b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.

The Wagners's challenge to EMC's status as the noteholder does not comport with the applicable provisions of the DTA or recent Washington case law. RCW 61.24.005(2) defines the "beneficiary" of a deed of trust as the actual noteholder. *See also Bain*, 175 Wn.2d at 89. An instrument payable to an identified person may become payable to bearer if it is a "blank indorsement" pursuant to RCW 62A.3-205(b). RCW 62A.3-301 states that "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." Here, there is a specific indorsement to EMC.

A "[h]older with respect to a negotiable instrument" is a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1-201(21)(A). The "holder" of the note is not necessarily the "owner," and a holder does not need to own a note to enforce the note. *Brown v. Wash. State Dep't of Commerce*, 184 Wn.2d 509, 525, 359 P.3d 771 (2015). However, "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." *Bain*, 175 Wn.2d at 89.

Our appellate courts have recently confirmed that the noteholder is the proper party to enforce a note. *See Brown*, 184 Wn.2d at 547 (the note holder is the party entitled to modify and enforce the note); *see also Trujillo v. Northwest Tr. Servs., Inc.*, 181 Wn. App. 484, 501, 326 P.3d 768 (2014) ("The holder of the note is entitled to enforce it, regardless of ownership."), *reversed in part by Trujillo*, 183 Wn.2d 820. "A party's undisputed declaration submitted under penalty of perjury that the party is the holder of the note satisfied the DTA's proof of beneficiary provisions." *Brown,* 184 Wn.2d at 514.

In *Lyons*, the homeowner brought a suit against the trustee, Northwest Trustee Services, for DTA and CPA violations arising from Northwest Trustee's attempted foreclosure based on purported ownership of the promissory note through the beneficiary declaration. *Lyons*, 181 Wn.2d at 779-82. The declaration in that case read,

> Wells Fargo Bank, NA . . . is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3–301 to enforce said obligation.

*Lyons*, 181 Wn.2d at 780. The *Lyons* court held that, on its face, the "or" language in the declaration was too ambiguous for Northwest Trustee to rely upon to obtain summary judgment against Lyons. 181 Wn.2d at 791. The court in *Trujillo* came to a similar conclusion regarding a nearly identical beneficiary declaration. 183 Wn.2d at 833-34. However, a trustee or party who seeks to nonjudicially foreclose on a note can still prove the identity of the actual noteholder through other means. *Lyons*, 181 Wn.2d at 791.

The relevant language in EMC's beneficiary declaration states,

> EMC Mortgage LLC (FKA EMC Mortgage Corporation) ("Secured Creditor["]) *is the current owner and/or the actual holder of the promissory note* dated March 14, 2005 executed by Daniel J. Wagner and Alice L. Wagner.

CP at 158 (emphasis added).

The language in EMC's declaration asserts that EMC is the "actual note holder." CP at 158. Thus, we hold that the declaration is not ambiguous and EMC's declaration satisfies the requirements of RCW 61.24.030(7). Moreover, even if the beneficiary declaration could be considered ambiguous, EMC presented other undisputed evidence in support of its status as the noteholder. EMC produced the original Note, signed in special indorsement, to the superior court. EMC also produced sworn declarations and pleadings attesting to the fact that EMC was in possession of the specially indorsed original Note at all relevant times. EMC also provided sworn responses attesting to the fact that it was the current noteholder and in possession of the note at all times after it received the specially indorsed original Note in the transfer from Wells Fargo.

EMC was the actual holder of the Note and, as such, it could properly enforce the Note upon the Wagners's default. Because there is no evidence that EMC's actions were unfair or

deceptive and EMC's status as the noteholder is dispositive, the superior court properly granted summary judgment and dismissed the Wagners's CPA claim.

### III. INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS

The Wagners argue that "numerous misrepresentations made to [them] in the course of the foreclosure process were laid out in great detail" before the superior court and preclude summary judgment. Br. of Appellant at 46. But the Wagners assert only general allegations that misrepresentations were made about the "2012 and 2013 nonjudicial foreclosure and participation in the FFA mediation" without any citation to the record to support their allegations. Br. of Appellant at 49.

To establish a claim of fraud or intentional misrepresentation, a plaintiff must prove the following by clear, cogent, and convincing evidence:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*Elcon Constr.*, 174 Wn.2d at 166.

To establish a claim of negligent misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence that:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). Thus, to prevail under either theory, a plaintiff must establish by clear, cogent, and convincing evidence that the defendant told the plaintiff something false.

A party opposing summary judgment "'may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.'" *State v. Kaiser*, 161 Wn. App. 705, 718, 254 P.3d 850 (2011) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

> The Wagners assert that EMC's alleged misrepresentations
>
> relate to who could appoint a successor trustee, cause[d] [a notice of default] to be issued, the authority to foreclose, including the creation, execution and recording of an Appointment of Successor Trustee document signed by someone other than the beneficiary and loan owner; [defendant's] reliance upon a "Declaration of Loan Ownership" with ambiguous language and signed by a purported "attorney in fact"; entry into an FFA mediation based [on] false information about the identity of the parties involved; and then issuance of [a notice of trustee sale] based upon that false information.

Br. of Appellant at 49. At summary judgment, the Wagners presented similar unsupported assertions without citation to the record. We are not required to search the record in support of a plaintiff's arguments. *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966); RAP 10.3(a). Because the Wagners fail to cite to any part of the record in support of their argument, we decline to address this issue further.

## IV. RES JUDICATA/JUDICIAL ESTOPPEL

The Wagners argue that res judicata and judicial estoppel do not preclude their claims against EMC for CPA violations and for intentional and negligent misrepresentation. Because EMC is the noteholder as explained above, we decline to reach this issue.

No. 47484-1-II

CONCLUSION

We hold that summary judgment was proper because there was no genuine issue of material fact as to EMC's status as noteholder. Because EMC's status as a noteholder is dispositive, we decline to review the Wagners's remaining arguments. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, P.J.

MELNICK, J.

14