# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SARA MONTE and CAMERON
MONTE, husband and wife and the
marital community comprised thereof,
CLARA MONTE, a minor child, and
GRACE MONTE, a minor child through
their guardians ad litem, Sara Monte
and Cameron Monte.

          Appellants,

          v.

CLARK COUNTY, WASHINGTON, a
political subdivision of the State of
Washington and ANTHONY GOLIK,
elected Prosecuting Attorney for Clark
County,

          Respondents.

No. 76031-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 17, 2017

MANN, J. — Sara Monte and her husband Cameron Monte sued Clark County

and its prosecuting attorney for; (1) false arrest; (2) false imprisonment; and (3) outrage

stemming from a 2014 arrest of Sara Monte for attempted murder of her daughter C.M.

The trial court granted summary judgment based on the claim that the prosecutor's

office had absolute immunity from liability for Monte's arrest. Because there is a dispute

of material fact as to whether the prosecutor's office was acting within the scope of its normal prosecutorial function, we reverse.

## FACTS

In November 2010, Sara Monte suffered an acute psychotic episode during which she tried to suffocate her daughter, C.M. While delusional and hallucinating, Monte placed her hand over her daughter's mouth and pinched her nose in an attempt to suffocate the child out of a belief that in order for her daughter to survive she needed to die. Monte then wandered naked in the snow to her neighbor's house where Clark County sheriff's deputies later found her. When the deputies found Monte, she "appeared to be confused and . . . startled." She did not know why she was at her neighbor's house. The deputies did not arrest Monte. Instead, an ambulance transported Monte to Legacy Salmon Creek Hospital where she was held for an involuntary medical evaluation and released.

Between November 2010 and February 2011, Monte's case was referred to Child Protective Services (CPS) and Detective Barry Folsom of the Clark County sheriff's office. Monte admitted to a CPS social worker that "[she] felt that in order to let [C.M.] live, [Monte] needed to kill her" and that "[Monte] plugged [C.M.'s] nose and put [her] hand over [C.M.'s] mouth."[1] Detective Folsom investigated the incident and referred the case to the Clark County Prosecuting Attorney's Office in February 2011.

In February 2011, CPS brought a dependency action and removed Monte's two children. As a condition of the dependency, Monte underwent treatment. Over the next year, Monte addressed her mental illness, and on April 10, 2012, the dependency was

---

[1] Clerk's Papers (CP) at 250.

-2-

dismissed. The Clark County Prosecutor's Office was aware that the dependency was dismissed and that Monte was reunited with her children. The prosecutor's office did not object to the dismissal.

In July 2013, Scott Jackson, the Chief Criminal Deputy Prosecuting Attorney for Clark County, took over as team leader of the County's Children's Justice Center (CJC) and reviewed Monte's case again as part of "cold intake." In September 2013, Jackson brought Monte's case forward to a multidisciplinary team meeting at the CJC to determine what action should be taken on Monte's case. At the September 19, 2013, meeting, Jackson summarized that "everyone in the room was requesting Monte be arrested on this matter."

On October 5, 2013, Jackson informed Detective Folsom and Vancouver Police Investigator Barbara Kipp that the prosecutor's office was "ready to file Attempted Murder 1" against Monte. In an e-mail, Jackson asked how Kipp wanted to bring Monte in:

> "I assume [Kipp] may want to do a PC arrest. If not, then we will need a PC affidavit for a summons. Please let me know which way you want to proceed, [Kipp]."[2]

On November 20, 2013, Jackson again e-mailed Kipp and Folsom regarding Monte. Jackson again asked Kipp "how [she] would like to proceed" in apprehending Monte.[3] There is no record of a response. Monte's case was ignored from November 2013 through April 2014.

---

[2] CP at 158 (emphasis added).
[3] CP at 160.

On April 1, in response to a concern about the whereabouts of Monte's case file, Jackson e-mailed Kipp. In his e-mail, Jackson suggested that Kipp craft a probable cause affidavit for Monte's arrest:

> I don't have Sara Monte. Not really sure what is going on with that one anymore. I was ready to charge it months ago. Problem is, the case was [Folsom's] and he apparently was unwilling to arrest and unwilling to do a [probable cause] affidavit. I think [Kipp] may have our file, so as to assist with putting together the [probable cause affidavit], if that makes any sense?[4]

On April 22, 2014, the Clark County Prosecutor's Office and law enforcement exchanged numerous e-mail messages about Monte. Vancouver Police Department Sergeant Spencer Harris e-mailed Kipp to ask about how he should proceed: "Summons based on stated mind set in 2010 during time or locate and arrest? I'm fine either way, just want to make sure." Kipp did not know whether Jackson wanted a summons.

To find out what Jackson wanted," Kipp e-mailed Nicole Drews, Jackson's legal assistant in the Clark County Prosecutor's Office. Kipp wrote Drews: "Hey there, do you know if [S]cott [Jackson] wanted [Monte] summons or arrested? I can[']t access the file from this phone."[5] Drews's response came a minute later: "Arrested. The child is living with [Monte] so there was fear with summonsing her in."[6] Kipp relayed to Harris that "[Monte] needs to be ar[re]sted. Victim in home."[7]

---

[4] CP at 90.
[5] CP at 94.
[6] CP at 94
[7] CP at 92.

On April 24, 2014, Harris arrested Monte for attempted murder in the first degree. A day after the arrest, a judge found probable cause based on a probable cause affidavit, signed by Kipp.

On April 28, 2014, Monte was charged with one count of attempted murder in the first degree. On June 20, 2014, the case against Monte was dismissed with prejudice.

Monte and her husband Cameron Monte (Montes) sued Clark County and the Clark County Prosecuting Attorney (collectively County), for (1) false arrest; (2) false imprisonment; and (3) outrage. On April 15, 2016, the trial court granted the County's motion for summary judgment dismissing the Montes's complaint in its entirety. The Montes appeal.

## ANALYSIS

### I.

We review summary judgment decisions de novo. Lyons v. U.S. Bank Nat. Ass'n, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). In reviewing a summary judgment order, we engage in the same inquiry as a trial court. Lyons, 181 Wn.2d at 783 (quotations omitted). We interpret all of the facts and inferences therefrom in favor of the Montes, the nonmoving party. Lyons, 181 Wn.2d at 783. "Summary judgment is appropriate only if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Lyons, 181 Wn.2d at 783.

II.

It is well established that a prosecutor acting within the scope of his or her duties in initiating and pursuing a criminal prosecution is absolutely immune from liability. Tanner v. City of Federal Way, 100 Wn. App. 1, 4, 997 P.2d 932 (2000) (citing Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). Absolute immunity protects prosecutors from liability even where willful misconduct is alleged. Musso-Escude v. Edwards, 101 Wn. App. 560, 568, 4 P.3d 151 (2000); McCarthy v. Clark County, 193 Wn. App. 314, 336-37, 376 P.3d 1127 (2016). Whether a prosecutor enjoys absolute immunity depends on the nature of the function performed. Tanner, 100 Wn. App. at 4 (citing Kalina v. Fletcher, 522 U.S. 118, 126, 119 S. Ct. 502, 139 L. Ed. 2d 471 (1997)). A prosecutor's absolute immunity applies only when the actions fall "within the scope of traditional prosecutorial functions." McCarthy, 193 Wn. App. at 337. Prosecutorial functions are those "'intimately associated with the judicial phase of the criminal process,'" in which the prosecutor is acting as "'an officer of the court.'" Lacey v. Maricopa County, 693 F.3d 896, 912 (9th Cir. 2012) (quoting Van de Kamp v. Goldstein, 555 U.S. 335, 341, 342, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009)).

A prosecutor is not immune for actions taken outside of the judicial phase of the criminal process. Actions "normally performed by a detective or a police officer" fall outside of absolute immunity's scope. Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). For example, providing legal advice to the police falls outside of absolute immunity's scope. See Burns v. Reed, 500 U.S. 478, 495-96, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). Similarly, ordering arrests or advising those making arrests are not prosecutorial functions. Lacey, 693 F.3d at 914.

III.

A.

The Montes argue that the trial court erred in granting summary judgment and dismissing their complaint. They claim that Jackson was not entitled to absolute immunity when his office directed Kipp to arrest Monte without a summons and prior to the probable cause hearing.

Here, when viewed in the light most favorable to the Montes, the e-mail exchange between Kipp and Jackson's office demonstrates that Jackson's office directed the arresting officers how to proceed with Monte's arrest. Two days before Monte was arrested, Harris, the arresting officer, asked Kipp how to proceed with the arrest. Kipp e-mailed Jackson's office, to ask if Jackson wanted Monte "summons or arrested." Jackson's legal assistant responded that Monte should be arrested because "[t]he child is living with [Monte] so there was fear with summonsing her in." We agree with the Montes that the exchange raised at least a question of material fact precluding summary judgment. Advising law enforcement about how Monte was to be apprehended was not a prosecutorial function for which Jackson is entitled to absolute immunity. To the extent that Jackson advised or directed Monte's arrest, he may not be entitled to absolute immunity.

B.

The County argues that Jackson did not give legal advice to the law enforcement officers in this case. They claim first that the record demonstrates that Jackson left the method of arrest up to Kipp and Folson. In support, the County asserts that a "follow-up" email, after the April 22, 2014, exchange between Jackson's office and Kipp, made

clear that Jackson was asking Kipp and Folsom how they would like to proceed with the arrest. But the referenced "follow up" e-mail occurred in November 2013—five months prior to Jackson's office directing Kipp to arrest without a summons.[8] The County claims second that the April 2014 e-mail from Jackson's office to Kipp "merely communicated a concern about how the arrest would be accomplished based on legitimate concerns about [Monte] disappearing, or harming her daughter again." But directing "how an arrest would be accomplished"[9] is not a function "'intimately associated with the judicial phase of the criminal process,'" in which the prosecutor is acting as "'an officer of the court.'" Lacey, 693 F.3d at 913 (quoting Van de Kamp, 555 U.S. at 341, 342).

Here, Kipp asked Jackson how he wanted Monte apprehended. This implies that Jackson was advising law enforcement on how to apprehend Monte. Jackson is not entitled to immunity for these actions because neither advising nor ordering a suspect's apprehension are prosecutorial functions. To the extent that Jackson directed Kipp about how to apprehend Monte, he is not entitled to absolute immunity for his action's consequences.

The County argues that McCarthy v. Clark County supports their position. But McCarthy is distinguishable. In McCarthy, Division Two of this court found that that an assistant city attorney did not act outside the scope of her duties as a prosecutor when she investigated a child abuse allegation. 193 Wn. App. 314, 339-40, 376 P.3d 1127 (2016). In McCarthy, the city prosecutor asked a witness to secure records from a

---

[8] CP at 160.
[9] Br. of Resp't. at 12-13.

-8-

fitness club to show that the witness's then-husband violated a no-contact order. 193 Wn. App. at 339. The prosecutor asked for more records so that she could bolster her existing charges against the then-husband. McCarthy, 193 Wn. App. at 338-39. The court held that the prosecutor did not act outside of her scope as a prosecutor because her actions (asking for the fitness club records and directing the witness to report no-contact order violations) were related to her duty to make charging decisions. McCarthy, 193 Wn. App. at 339.

In this case, however, the April 22, 2014, e-mail exchange between Jackson's office and Kipp was not related to a charging decision. Jackson had already told Kipp on October 5, 2013, that he was "ready to file Attempted Murder 1" against Monte. Thus, unlike in McCarthy, the April 22, 2014, e-mail from Jackson's office to Kipp was not related to a charging decision. The e-mail advised law enforcement how to apprehend Monte (summons versus arrest).

Interpreting the facts in the light most favorable to the Montes, there is a genuine dispute of material fact as to whether Jackson advised Monte's arrest, an action for which Jackson does not enjoy absolute immunity. We reverse.

_Mann, J_

WE CONCUR:

_Appelwick, J_          _Becker, J._

-9-