# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

JOHN PHILLIP HALL, an individual,　　　)　　No. 74602-2-I
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Appellant,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
JP MORGAN CHASE BANK,　　　　　　　)
a national bank; QUALITY LOAN　　　　)
SERVICE CORPORATION OF　　　　　　)
WASHINGTON, a Washington　　　　　　)
corporation; WELLS FARGO BANK,　　)
N.A., as Trustee for WaMu Mortgage　)
Pass-Through Certificates Series　　　)
2005-PR4 Trust, WAMU MORTGAGE　)　　UNPUBLISHED OPINION
PASS-THROUGH CERTIFICATES　　　)
SERIES 2005-PR4 TRUST, a foreign　)　　FILED: October 24, 2016
trust,　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Respondents.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)

VERELLEN, C.J. — John Hall appeals the summary judgment orders dismissing his claims against JP Morgan Chase Bank, Quality Loan Service Corporation of Washington, and Wells Fargo Bank, N.A. for violations of unspecified portions of the Foreclosure Fairness Act (FFA)[1] and Consumer Protection Act (CPA).[2] Hall's primary argument is that the defendants acted in bad faith by refusing to participate in a foreclosure mediation without the consent or involvement of the original borrower

---

[1] Ch. 61.24 RCW.

[2] Ch. 19.86 RCW.

under the loan, Hall's ex-wife, from whom he acquired the property in a dissolution proceeding. But the statutory amendment that Hall relies on, RCW 61.24.165(6), was not in effect at the time the mediation occurred. And Hall provides no authority, or argument, for the retroactive application of that amendment. As to his CPA claim, Hall presented no evidence that any alleged unlawful act by the defendants caused his injuries. Summary judgment was proper.

We also conclude the trial court did not abuse its discretion in denying Hall's motions for leave to amend and for a CR 56(f) continuance. Therefore, we affirm.

FACTS

In 2005, Diane Hough borrowed $272,000 from Washington Mutual Bank. She signed a promissory note and executed a deed of trust encumbering her Edmonds condominium. The deed of trust named Washington Mutual as the lender and beneficiary and First American Title as trustee. Washington Mutual later sold the loan to a securitized trust with Wells Fargo Bank, N.A., acting as trustee. Washington Mutual remained the servicer.

Hough defaulted on her loan in June 2008.

In September 2008, Washington Mutual failed, and the Federal Deposit Insurance Corporation placed the bank in receivership. Under a purchase and assumption agreement, JP Morgan Chase Bank (Chase) acquired the servicing rights to Hough's loan.

In 2013, Chase, as attorney-in-fact for Wells Fargo, appointed Quality Loan Service Corporation of Washington as successor trustee of the deed of trust.

Quality Loan issued a notice of default in January 2014.

That same month, John Hall acquired the condominium in a dissolution proceeding with Hough. Per the dissolution decree, Hall was required to refinance the loan by July 2014 to remove Hough as a borrower, or to sell the property.

In March 2014, Hall submitted a "request for mortgage assistance" application.[3] On April 14, 2014, Hall and Wells Fargo participated in a foreclosure mediation under the FFA, but no agreement was reached. Wells Fargo explained they had no authority to consider Hall for a loan modification because (1) he was not the original borrower and (2) the original borrower, Hough, did not sign the loan modification application, was not present at the mediation, and did not execute a power of attorney authorizing Hall to negotiate a loan modification on her behalf.[4] On May 1, 2014, the FFA mediator certified that the parties mediated in good faith.

In February 2015, Quality Loan recorded a notice of trustee's sale, setting a nonjudicial foreclosure sale for June 2015. Quality Loan continued the sale twice, ultimately setting the sale for February 26, 2016.

On June 3, 2015, Hall moved to enjoin the trustee's sale.

That same day, Hall sued Chase, Quality Loan, and Wells Fargo, alleging they violated unspecified portions of the FFA and CPA.[5] Hall filed an amended complaint later that month. The defendants moved for summary judgment in November 2015.

---

[3] Clerk's Papers (CP) at 269-74.

[4] See CP at 266 ("Beneficiary said that because Ms. Hough is liable for the debt and has settlement authority, she would need to be present to discuss options. There has not been any communication from Ms. Hough.").

[5] Hall also claimed Quality Loan was liable for breach of trust. CP at 510.

On December 9, 2015, Hall moved for leave to file a second amended complaint "based on newly discovered information that defendant Chase has provided false and/or incorrect information to plaintiff."[6] Hall alleged Chase had "previously advised plaintiff that the loan investor, Freddie Mac, does not participate in the Loan Assumption Modification Program or 'otherwise allow for loan assumption.' Plaintiff's counsel has just discovered, however, that this information is flatly contradicted by several recent informational bulletins issued by Freddie Mac."[7]

On December 15, 2015, after considering the pleadings and records filed therein, including Hall's motion for leave to amend his complaint, the trial court granted the defendants' motions for summary judgment. That same day, the court denied Hall's motion for leave to amend his complaint.

In February 2016, the trial court granted Hall's motion for injunction and temporary restraining order, cancelling the February 26, 2016 trustee's sale.

Hall appeals the summary judgment orders.

## ANALYSIS

### Foreclosure Mediation

We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[8] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[9] Summary judgment is proper if there are no

---

[6] CP at 54.

[7] CP at 55 (citations omitted).

[8] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[9] Fulton v. State, Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

4

genuine issues of material fact.[10] "A material fact is one that affects the outcome of the litigation."[11]

A defendant moving for summary judgment "has the initial burden to show the absence of an issue of material fact, or that the plaintiff lacks competent evidence to support an essential element of [his] case."[12] If the defendant meets this initial showing, then the inquiry shifts to the plaintiff to set forth evidence to support his case.[13] The evidence set forth must be specific and detailed.[14] The responding plaintiff may not rely on conclusory statements, mere allegations, or argumentative assertions.[15] If the plaintiff fails to establish the existence of an essential element that he bears the burden of proving at trial, then summary judgment is warranted.[16]

Hall claims the defendants violated the FFA "when they refused, at mediation, to allow plaintiff, who had received property through a divorce, to individually seek a loan modification."[17] Specifically, he relies on "RCW 61.24.165(6), which provides

---

[10] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013) (quoting Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

[11] Janaszak v. State, Dep't of Soc. & Health Servs., 173 Wn. App. 703, 711, 297 P.3d 723 (2013).

[12] Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001).

[13] Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[14] Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

[15] CR 56(e); Vacova Co. v. Farrell, 62 Wn. App. 386, 395, 814 P.2d 255 (1991).

[16] Young, 112 Wn.2d at 225.

[17] Appellant's Br. at 1.

that such a person much be treated as a borrower."[18] He claims that "by not fairly engaging in a mediation, it remains an unresolved factual issue" whether the defendants "acted in good faith at the mediation."[19]

But the statutory amendment to RCW 61.24.165 that Hall relies on was not in effect at the time of the foreclosure mediation in this case. RCW 61.24.165(6) states:

> For purposes of referral and mediation under RCW 61.24.163, a person may be referred to mediation if the person has been awarded title to the property in a proceeding for dissolution or legal separation. . . . For the purposes of mediation under RCW 61.24.163, the person must be treated as a "borrower."

The amendment did not become effective until June 12, 2014, nearly two months *after* the April 14, 2014 mediation occurred. And Hall provides no authority, or argument, for the retroactive application of that amendment.[20] Therefore, we conclude Hall's bad faith and related CPA arguments regarding the lender's request that Hall's ex-wife consent to or participate in the loan modification mediation do not create a question of fact precluding summary judgment.[21]

---

[18] Id.

[19] Id. at 10-11.

[20] To the extent Hall refers to the refusal of the lender to continue the mediation when they were aware the amendment was adopted but not yet effective, he provides no authority or argument that the lender had such an obligation. See Appellant's Br. at 5.

[21] The Northwest Consumer Law Center filed an amicus brief in support of Hall's position. The Consumer Law Center argues that it defeats the entire purpose of the statutory amendment if homeowners are excluded from participating in foreclosure mediation absent the participation of the ex-spouse from whom they gained title. The statutory amendment serves the purpose of not allowing a lender to exclude an ex-spouse such as Hall from mediation. It does not, however, compel the lender to proceed with the mediation absent the original borrower's consent or involvement.

*CPA Claim*

Hall next claims Chase "misrepresented material facts to him and his attorney, claiming that no loan modification relief was available to him when this claim was contradicted by Freddie Mac guidelines."[22] He asserts "a reasonable inference could be made that if no mortgage relief was available, as asserted by respondent in its July 2015 letter of counsel and the declaration of Joseph Devine, then the March 2014 mediation was a sham and could not have been conducted in good faith."[23]

On November 12, 2015, the same day Chase filed its motion for summary judgment, Chase employee Joseph Devine filed a declaration asserting that "Freddie Mac[ ] does not participate in the Loan Assumption Modification Program or otherwise allow for loan assumption."[24] In a July 14, 2015 letter to Hall's counsel regarding his lawsuit, Chase's counsel reiterated that Chase had "previously communicated to Mr. Hall, Ms. [Hough]'s loan is owned by Freddie Mac, and Freddie Mac does not currently participate in any loan assumption programs."[25] Hall's position is that this alleged misrepresentation, coupled with Chase's violation of "the FFA by failing to treat him as a borrower and not reviewing his loan modification application in good faith," created a question of material fact precluding summary judgment.[26] We disagree.

---

[22] Reply Br. at 4.
[23] Id.
[24] CP at 195.
[25] CP at 77.
[26] Reply Br. at 4.

7

A CPA claim has five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation."[27]

An act or practice is unfair or deceptive if it has the capacity to deceive a substantial portion of the public or if the legislature declares it to be unfair or deceptive.[28] A practice is deceptive if it "'misleads or misrepresents something of material importance.'"[29] "Whether an act is unfair or deceptive is a question of law."[30] But whether an unfair act "has the capacity to deceive a substantial portion of the public is a question of fact."[31]

Hall asserts that "a violation of the FFA should be treated as a per se violation of the CPA."[32] But a per se CPA violation requires an express statutory provision identifying a per se violation.[33] Hall cites no statute declaring a per se CPA violation. Moreover, as addressed above, Hall's argument relies on a statutory amendment to the FFA that was not in effect at the time Hall's foreclosure mediation occurred. Therefore, Hall's argument fails.

---

[27] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[28] Id. at 785.

[29] Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 318, 308 P.3d 716 (2013) (quoting Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226, 135 P.3d 499 (2006)).

[30] Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 835, 355 P.3d 1100 (2015).

[31] Walker, 176 Wn. App. at 318.

[32] Appellant's Br. at 13.

[33] Hangman Ridge, 105 Wn.2d at 786 ("A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated.").

Even assuming Hall could establish an unfair or deceptive act or practice, proximate cause is critical here. Hall must show a causal link "between the unfair or deceptive acts and the injury suffered."[34] That link must establish that the alleged injury would not have occurred "but for" the defendant's unlawful acts.[35]

Hall alleges that while a sale of the property has not yet occurred, he "has suffered injury by the fact that he has been unable to effectively explore other financing options *given the default foreclosure status on the property.*"[36]

But by the time Hall acquired the property in the dissolution, the mortgage was already in default and the foreclosure process had already commenced. More importantly, Hall cannot demonstrate that Chase's alleged misrepresentation had any impact on his mortgage relief effort because any meaningful relief arising out of the April 2014 foreclosure mediation required the consent or involvement of the original borrower.[37]

---

[34] Id. at 793.

[35] Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 278, 259 P.3d 129 (2011) (quoting Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 82, 170 P.3d 10 (2007)).

[36] Reply Br. at 8 (emphasis added). Hall also alleges "he has a community property interest in the home from the marriage and Chase's argument that he is a 'stranger' to the note effectively deprives him of that property right and value." Id. Hall alleges he has resided in the condominium since September 2005. The record on appeal, however, does not reveal when Hall married Hough. The record also does not explain the significance of the deed placing the property in trust.

[37] It is not apparent that Hall even sought to assume Hough's loan despite Chase's alleged misrepresentation about the availability for a loan assumption. On its face, Hall's "request for mortgage assistance" application does not reflect an independent application for loan assumption. Indeed, in his complaint, Hall only asserted that he "submitted a *loan modification application*" to Chase," that he "seeks to remove his ex-wife's name from the note on the property *through a loan modification or refinancing of the note,* and that he "hired an attorney last year . . . to

9

All in all, no evidence indicates that, but for unlawful acts by Chase, Hall would have obtained a loan modification. Hall thus failed to present evidence sufficient to create a genuine issue of material fact as to the first and fifth elements of his CPA claim. We affirm the trial court's dismissal of Hall's CPA claim against Chase.

*Trustee's Duty of Good Faith*

Hall claims Quality Loan violated its duty of good faith towards him by failing to act impartially. Attorney Robert McDonald represented Wells Fargo at mediation and later represented Quality Loan in advancing the foreclosure. Quality Loan shares ownership and office space with McDonald's former firm, McCarthy & Holthus, which represented Wells Fargo. Quality Loan notes that McDonald never worked for McCarthy & Holthus and Quality Loan at the same time. It further points out that Hall does not describe any impact on him from McDonald representing both companies, whether successively or simultaneously.

"RCW 61.24.010(4) imposes a duty of good faith on the trustee toward the borrower, beneficiary, and grantor."[38] The "trustee must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith."[39] The trustee may not as a practice "defer[ ] to the lender on whether to

---

facilitate his efforts to *modify or refinance the loan* and assist with a mediation" under the FFA. CP at 508 ¶¶ 3.2, 3.5 & 3.6 (emphasis added).

[38] Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 787, 336 P.3d 1142 (2014).

[39] Id.

postpone a foreclosure sale and thereby fail[ ] to exercise its independent discretion as an impartial third party."[40]

But here, Hall makes no showing that the trustee improperly deferred to the lender and thus breached its duty of good faith. Although a lawyer's dual representation of a lender and trustee might raise questions about the trustee's good faith in some circumstances, Hall offered no evidence of bad faith here. He has not shown any reason the trustee should not have foreclosed.

### Leave to Amend

Hall contends the trial court erred in denying his motion to file a second amended complaint. We disagree.

The decision to grant leave to amend the pleadings is within the trial court's discretion.[41] Absent an abuse of discretion, the trial court's decision will not be disturbed on appeal.[42] In determining whether prejudice would result, we may consider potential delay, unfair surprise, and the probable merit or futility of the amendments requested.[43]

Here, Hall waited less than a week before the December 15, 2015 hearing on the defendants' motions for summary judgment to move for leave to file a second

---

[40] Klem v. Washington Mut. Bank, 176 Wn.2d 771, 792, 295 P.3d 1179 (2013). The Supreme Court has expressed skepticism that an attorney for a party who also acts as the trustee can fulfill its duty of good faith. Schroeder v. Excelsior Mgmt. Grp., LLC, 177 Wn.2d 94, 101 n.3, 297 P.3d 677 (2013).

[41] Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999).

[42] Id.

[43] Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154 (1997); Karlberg v. Otten, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012).

amended complaint based on the "newly discovered information" about the availability of loan assumptions.[44] The respondents allege Hall was "aware of the factual basis for the proposed amendments since before the filing of his lawsuit."[45] The "newly discovered" documents that Hall relies on are "Freddie Mac Bulletin[s]" addressed to "Freddie Mac Servicers" dated February 15, 2013, July 15, 2014, and April 2015.[46] It is unclear from the record, however, when Hall discovered these bulletins. And Hall provides no explanation for his delayed motion for leave to amend.

The respondents argue the trial court denied Hall's motion in part because it failed to comply with CR 15(a) and Snohomish County Local Court Rule 15(e).[47] But the trial court did not articulate why it denied Hall's motion. Without regard to Hall's noncompliance with these rules, we conclude the trial court did not abuse its discretion. Hall's proposed amendments would have been futile. As explained above, because any meaningful relief arising out of the April 2014 mediation required the consent or involvement of the original borrower, Hall cannot show that Chase's alleged misrepresentation impacted him.

---

[44] CP at 54-56.

[45] Respondent's Br. (Chase) at 17.

[46] CP at 74-75, 80-85, 87-93, 95-96.

[47] If a party moves to amend a pleading under CR 15(a), "a copy of the proposed amended pleading, denominated 'proposed' and unsigned," must be attached to the motion. SCLCR 15(e) requires "[i]nterlineations, corrections, and deletions on pleadings and all other papers to be filed with the clerk" to "be initialed by the party or counsel filing them."

## CR 56(f) Continuance

Finally, Hall argues that "[p]ursuant to CR 56(f)," "summary judgment should not have been granted in this matter given plaintiff's outstanding and unanswered discovery requests."[48]

When a party moves for summary judgment, the opposing party may request a continuance if it needs additional time to obtain affidavits that will justify its opposition to summary judgment.[49] But the court "may deny a motion for a continuance when (1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact."[50]

We review a trial court's decision to deny a continuance for an abuse of discretion.[51]

Hall did not file a separate motion for a continuance but requested one in the conclusion of his response to the defendants' motions for summary judgment:

> Plaintiff has propounded discovery on defendant Chase Bank and defendant [Quality Loan]. This discovery seeks to determine, *inter alia*, any cross-ownership interests between the trustee QLS and the law firm of McCarthy & Holthus, the trustee's legal counsel and Mr. McDonald's former employer, along with the current status of Mr. Hall's loan modification application with Chase Bank.

---

[48] Appellant's Br. at 17.

[49] CR 56(f).

[50] Coggle v. Snow, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

[51] Id. at 504.

Until such time as discovery can be completed and additional relevant factual information can be evaluated, any motion for summary judgment is premature and should be denied.[52]

Hall offered no justification for the delay in obtaining this evidence. And he failed to demonstrate how this evidence would raise an issue of material fact precluding summary judgment. Therefore, we conclude the trial court did not abuse its discretion in denying Hall's motion for a continuance.

We affirm.

WE CONCUR:

---

[52] CP at 174.

14