COURT OF APPEALS DIV 1
2018 JUN 25 AM 9: 09


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FRED BARUCH, )
     )    No. 76462-4-I
         Appellant, )
     )    DIVISION ONE
       v. )
     )    UNPUBLISHED OPINION
BANK OF AMERICA, NA; WELLS FARGO )
BANK, NA; and NORTHWEST TRUSTEE )
SERVICES, INC., )
     )
         Respondents. )    FILED: June 25, 2018
     )

APPELWICK, C.J. — Baruch argues that Wells Fargo, the servicer, and Bank of America, the beneficiary, violated the Consumer Protection Act,[1] because they gave deceptive statements about who possessed the note underlying Baruch's mortgage. Baruch also argues that Northwest Trustee Services violated the CPA, because it should have further investigated to ascertain the true beneficiary of the note. We affirm.

## FACTS

Fred Baruch financed a home in 2004. The loan note for $508,000.00 was payable to Wells Fargo Home Mortgage Inc.

On December 31, 2013, Wells Fargo Bank, N.A. (WF),[2] granted, sold, assigned, transferred, and conveyed the rights and obligations under the deed to

---

[1] Ch. 19.86 RCW.
[2] It appears that Wells Fargo Bank N.A., is the successor by merger to Wells Fargo Home Mortgage Inc. This distinction is immaterial for the issues on appeal.

Bank of America, N.A. (BOA).[3] WF remained the servicer[4] of the loan. The validity of this assignment is not at issue.

Baruch stopped making payments. In 2014, WF directed the trustee to begin the non-judicial foreclosure process. On March 10, 2014, in keeping with the December assignment, WF signed a beneficiary declaration that identified BOA as the beneficiary. On November 18, 2014, WF signed another beneficiary declaration, as "Attorney in Fact of Beneficiary," that identified BOA as the actual holder and beneficiary of the note. However, also on November 18, 2014, WF, "as actual holder of the Note," appointed Northwest Trustee Services Inc.[5] (NTS) as

---

[3] We refer to Wells Fargo and Bank of America collectively as the "banks."

[4] The following describes the practical role of the loan servicer:

> The servicer stands in for the trust, the beneficial owners of the loans, and the investors in virtually all dealings with homeowners. It is the servicer to whom homeowners mail their monthly payments, the servicer who provides billing and tax statements for homeowners, and the servicer to whom a homeowner in distress must address a petition for a loan modification.
>
> . . . .
>
> Most of what servicers do is routine and automated: accepting payments and applying them to accounts. But when a loan becomes delinquent, the amount and nature of servicing changes. Decisions about whether to foreclose or modify must be made. The homeowner must be contacted. If the house is vacant, it must be secured. The timing of the foreclosure must be managed, and ancillary service providers, from title companies to attorneys to real estate brokers for a post-foreclosure sale, must be hired. All those decisions are left largely to servicers' discretion.

Diane E. Thompson, Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications, 86 WASH. L. REV. 755, 765 (2011) (footnotes omitted).

[5] NTS was originally represented by counsel in this appeal. But, after it filed its appellate brief, its counsel withdrew. A Court of Appeals commissioner ruled

the trustee. In other words, WF had identified BOA as the beneficiary and actual holder of the note, but also stated that WF was the actual holder of the note.

Baruch engaged in statutorily required mediation with BOA. Mediation was unsuccessful. NTS issued a notice of trustee's sale, but the sale was suspended pending this lawsuit.

Baruch filed a Consumer Protection Act (CPA) claim alleging deceptive practice by WF, BOA, and NTS. WF and BOA moved for summary judgment, and NTS also moved for summary judgment. The trial court granted these two motions.

Baruch appeals.

## DISCUSSION

Baruch makes two arguments.[6] First, he argues that the banks acted deceptively and thus violated the CPA. Second, he argues that NTS violated the CPA by relying on faulty beneficiary declarations. NTS, and NTS only, seeks attorney fees.

The trial court granted summary judgment to the banks and NTS. When reviewing a summary judgment order, this court engages in the same inquiry as the trial court. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Id. All facts and

---

that NTS, as an entity, must be represented by counsel on appeal. But, nothing in the record suggests that NTS is now represented by new counsel.

[6] In his reply brief, Baruch raises a third argument regarding the note's alleged special indorsement. But, he did not argue this below. Under RAP 2.5(a), an appellate court need not address an argument not raised below. We therefore do not address it.

reasonable inferences are considered in the light most favorable to the nonmoving party. Id. Questions of law are reviewed de novo. Id.

This case is not a challenge to the foreclosure itself. It is a CPA case. Washington's CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The purpose of the CPA is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive and fraudulent acts and practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. The CPA is to be "liberally construed [so] that its beneficial purposes may be served." RCW 19.86.920; Short v. Demopolis, 103 Wash.2d 52, 60, 691 P.2d 163 (1984).

The CPA's citizen suit provision states that "[a]ny person who is injured in his or her business or property" by a violation of the Act may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages. RCW 19.86.090. To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009). Whether a particular act or practice is "unfair or deceptive" is a question of law. See Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 149-50, 930 P.2d 288 (1997).

Baruch does not seek relief under the deed of trust act.[7] But, he argues that certain provisions under the deed of trust act highlight the importance of clearly identifying the status of the various parties in a foreclosure. Under the deed of trust act, "beneficiary" is defined as the "holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). Lenders are free to sell a secured debt, typically by selling the promissory note signed by the debtor. Bain v. Metro. Mort. Grp., Inc., 175 Wn.2d 83, 88, 285 P.3d 34 (2012). The deed of trust act recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. Id. The act therefore gives subsequent holders of the debt the benefit of the act by defining "beneficiary" broadly. Id.; RCW 61.24.005(2).

A trustee or successor must be appointed by the beneficiary of a note. RCW 61.24.010(2). Only a trustee appointed by a beneficiary is authorized to conduct a non-judicial foreclosure. Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 486, 309 P.3d 636 (2013), abrogated in part on other grounds by Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 334 P.3d 529 (2014). Thus, when an unlawful beneficiary appoints a successor trustee, that trustee lacks legal authority to carry out the foreclosure. Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 306, 308 P.3d 716 (2013), abrogated in part on other grounds by Frias. And, before issuing a notice of a trustee's sale, the trustee must have proof that the claimed beneficiary is the actual holder of the note. Trujullo v. Nw. Trustee Servs., Inc., 183 Wn.2d 820, 832, 355 P.3d 1100 (2015). This may be satisfied by a

[7] Ch. 61.24 RCW.

5

declaration of the beneficiary, in which the beneficiary attests that it is the actual holder of the note. Id.

## I. Deceptive Acts by Banks

Here, Baruch identifies three separate acts by WF and BOA as deceptive.[8] First, he argues that the declarations that distinguish between the holder and owner of a note are deceptive. He reasons that an ordinary mortgage holder would not understand the finer distinctions between note beneficiary and note holder.

Second, he argues that the notice of trustee sale that identified BOA as the beneficiary was deceptive, because it conflicted with statements by the banks' attorney that, according to Baruch, suggested that WF was the holder of the note.[9]

Third, he argues that it was deceptive for BOA or WF to appoint a trustee, because only the holder of a note may appoint a trustee, but the identity of the note holder was unclear. On the one hand, in its appointment of trustee NTS, WF stated that was the actual holder of the note. But, on the other hand, WF's beneficiary declarations stated that BOA was the actual holder and beneficiary of the note. Baruch argues that these statements conflict, because "the beneficiary is the actual holder of the promissory note." RCW 61.24.030(7)(a).

---

[8] The banks argue that this argument has been waived, because Baruch failed to properly raise it below. We disagree. In his response to the summary judgment, Baruch raised the issue with BOA and WF's entitlement to foreclose based on owner status.

[9] In Baruch's second claim that the notice of trustee's sale was deceptive, he primarily argues that it conflicted with counsel's statements before the trial court that he interpreted to mean that WF, rather than BOA, is the beneficiary. Baruch fails to identify how a statement by counsel before the trial court, well after the foreclosure process began, deceived Baruch as a consumer of the banks' services. Moreover, the banks actually asserted that WF was merely holding the note on BOA's behalf.

Baruch relies on <u>Rucker v. NovaStar Mortgage, Inc.</u>, 177 Wn. App. 1, 311 P.3d 31 (2013). Rucker sought to set aside a trustee's sale on grounds that the trustee was not properly appointed by an eligible beneficiary prior to the sale taking place. <u>Id.</u> at 5. Rucker had obtained two loans from NovaStar. <u>Id.</u> at 6. The deeds of trust listed Quality Loan Services (QLS) as trustee. <u>Id.</u> NovaStar conveyed the loans to JPMorgan Chase Bank and J.P. Morgan Trust Company respectively. <u>Id.</u> NovaStar retained responsibility for servicing the loans. <u>Id.</u> NovaStar appointed QLS as trustee. <u>Id.</u> Rucker defaulted, and QLS conducted a trustee's sale. <u>See id.</u> at 7, 14. However, the servicing agreement explicitly stated that NovaStar's relationship to JPMorgan Chase Bank and J.P. Morgan Trust Company was intended " 'to be that of an independent contractor and not that of a joint venture, partner, or agent.' " <u>Id.</u> at 7. As a result, this court held that summary judgment was not appropriate, because it was possible that QLS had no authority to appoint the trustee in the first place. <u>Id.</u> at 16, 18.

But, <u>Rucker</u> is critically different from Baruch's case, because of the servicing agreement in Rucker that explicitly stated that the servicer was <u>not</u> the owner's agent, WF was BOA's agent, and it identified itself as BOA's attorney in fact. Our Supreme Court has explicitly endorsed the use of agents in possessing notes: "Washington law, and the deed of trust act itself, approves of the use of agents." <u>Bain</u>, 175 at 106. Moreover, in <u>Brown v. Department of Commerce</u>, our Supreme Court explained the relationship between owner and servicer as follows:

> Even while the servicer acts on Freddie Mac's behalf to hold the note, to seek to modify the note, and to foreclose on the note, Freddie Mac

still owns the note. As the note owner, Freddie mac remains entitled to "the ultimate economic benefit of payments on the note."

184 Wn.2d 509, 523, 359 P.3d 771 (2015) (quoting the amicus brief at 3). It also observed that "Washington's Uniform Commercial Code (UCC) authorizes this division of note ownership from note enforcement." Id.

WF explicitly identified itself as acting on behalf of BOA. This clarified its status as the agent of BOA. As BOA's agent, WF could rightfully possess BOA's note, without usurping the powers that BOA retained as owner, beneficiary, and constructive possessor of the note. Moreover, WF's statement that it was actual holder of the note was not deceptive, because it was in fact in actual possession of the note, on behalf of BOA. And, as the agent it had authority to appoint the successor trustee.

None of the statements by WF were factually or legally erroneous. Baruch may not have understood the nuance or legal effect of the statements, but that alone does not make them deceptive acts. In essence, Baruch asks the court to find that, if an agent of a beneficiary ever states that it is holding the note, without simultaneously explicitly stating its status as agent, it is subject to CPA liability for a deceptive act. But, that is not the rule. WF's status as agent was identified at the outset. The acts by the banks to which Baruch points do not amount to a deceptive practice.

## II. Deceptive Acts by NTS

Baruch next contends that the trial court erred in dismissing his CPA claim against NTS. He claims that NTS violated the CPA, because it relied on WF's beneficiary declaration claiming that BOA is the actual holder of the note, and also

relied on WF's appointment of trustee that claimed WF was the actual holder of the note. Baruch claims that, by relying on these allegedly conflicting statements, NTS breached its duty of good faith to Baruch, and is therefore subject to CPA liability.

RCW 61.24.030(7) describes the proof that a trustee must require before the trustee may proceed with a sale:

> (a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.
>
> (b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.

RCW 61.24.010(4) imposes upon the trustee "a duty of good faith to the borrower, beneficiary, and grantor."

Our Supreme Court has described the trustee's duty of good faith as follows:

> This duty requires the trustee to remain impartial and protect the interests of all the parties. "[T]he trustee in a nonjudicial foreclosure action has been vested with incredible power. Concomitant with that power is an obligation to both sides to do more than merely follow an unread statute and the beneficiary's directions." Klem[ v. Wash. Mut. Bank], 176 W[n].2d [771], 791[, 295 P.3d 1179 (2013)]. A foreclosure trustee must "adequately inform" itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a "cursory investigation" to adhere to its duty of good faith. Walker, 176 W[n].[ ]App. 309-10. A trustee does not need to summarily accept a borrower's side of the story or instantly submit to a borrower's demands. But a trustee must treat both sides equally and investigate

9

possible issues using its independent judgment to adhere to its duty of good faith. See, e.g., Cox v. Helenius, 103 W[n].2d 383, 388, 693 P.2d 683 (1985). A trustee's failure to act impartially between note holders and mortgagees, in violation of the [deed of trust act], can support a claim for damages under the CPA.

Lyons v. U.S. Bank Nat. Ass'n, 181 Wn.2d 775, 787, 336 P.3d 1142 (2014) (first alteration in original) (internal quotation marks omitted).

Baruch does not analogize to any specific case. But, Lyons provides an example of a trustee's breach of its duty of good faith. Lyons signed a deed of trust that identified WF as beneficiary and NTS as the trustee. Id. at 780. Lyons later filed for bankruptcy. Id. She requested a loan modification. Id. While she was waiting for a response to the modification request, she received a notice of trustee's sale. Id. After receiving that notice, WF informed her that her modification request had been approved. Id. However, WF had sold the loan into a new trust, with a new trustee, and a new servicer. Id. at 781. Lyons's attorney twice spoke with an NTS representative to inform NTS that WF no longer had an interest in the loan, that there was a new servicer, and that Lyons had received a modification and therefore was no longer in default. Id. An NTS employee informed Lyons's attorney that the new servicer had directed NTS to nevertheless proceed with the trustee's sale. Id. But, three days later, the new servicer told Lyons's attorney that it had not directed NTS to proceed with the trustee's sale. Id. Lyons's attorney informed NTS, but NTS maintained that the sale was "still on." Id. Lyons filed suit. Id.

The court found that summary judgment was inappropriate on whether NTS's acts violated its duty of good faith, and were thus unfair or deceptive. Id. at

788-89. It reasoned that the controversy over the status of the loan was brought to NTS's attention, but nothing in the record showed that anyone at NTS investigated the issue for two months, at the same time that NTS was proceeding to sale. Id. at 788. "If Lyons' allegations are true and [NTS] knew about the conflicting information regarding their right to initiate foreclosure but did not look into this matter, there are issues regarding whether this indicates deferral to WF and therefore lack of impartiality." Id. Moreover, the court reasoned that

> [t]ypically, unless the trustee has violated a duty of good faith, it is entitled to rely on the beneficiary's declaration when initiating a trustee's sale. See RCW 61.24.030(7)(b). But if there is an indication that the beneficiary declaration might be ineffective, a trustee should verify its veracity before initiating a trustee's sale to comply with its statutory duty.

Id. at 790.

In Baruch's case, there was no such indication that the beneficiary declaration might be ineffective. On March 10, 2014, WF, as "beneficiary or authorized agent for the beneficiary," executed a beneficiary declaration stating unambiguously that BOA was the beneficiary. On November 18, 2014, WF, as "Attorney in Fact of Beneficiary," executed another beneficiary declaration stating unambiguously that BOA was the actual holder of the note and the beneficiary. Also on November 18, 2014, WF executed the appointment of successor trustee NTS, and that appointment explicitly identified WF as "servicing agent for" BOA. The notice of default, mailed to Baruch on December 10, 2014, identified BOA as the owner of the note. And, the record shows that Baruch engaged in foreclosure mediation with BOA.

11

Baruch stresses that the November 18 appointment of successor trustee referred to WF as actual holder of the note, which contradicts the November 18 beneficiary declaration. But, the Lyons court explained that the trustee is entitled to rely on an unambiguous beneficiary declaration. 181 Wn.2d at 790. And, here the beneficiary declaration is unambiguous. Washington law permits the use of agents to enforce rights under deeds of trusts. This would permit WF to be the actual holder of the note, while holding it on behalf of BOA, which the appointment reflected. The misrepresentation of facts and ambiguity of Lyons is not present here. The fact that WF was holding the note on BOA's behalf did not require any further investigation by NTS in order to comply with its duty of good faith.

We hold that (1) Baruch fails to identify a deceptive act by the banks, and (2) that NTS did not violate its duty of good faith, did not act deceptively. The trial court properly dismissed Baruch's CPA claim.[10]

III.   Attorney Fees

NTS, and NTS only, requests attorney fees under RAP 14.2. NTS cites no case law for its request. And, since it filed its response brief, its counsel withdrew. No attorney subsequently filed a notice of appearance. "[C]orporations appearing in court proceedings must be represented by an attorney." See Lloyd Enters, Inc.

---

[10] Baruch must also satisfy the public interest, causation, and damages elements of a CPA claim. With respect to damages, Baruch argued below in his motion response, rather than a declaration, that he lost business profits due to his investigation of the alleged deceptive practices. He only briefly references those alleged loss business profits, and provided no supporting evidence. He asks that the court "exercise its discretion favorably" and overlook this omission, because he is bringing to light a deceptive practice. Therefore, even if Baruch could identify a deceptive act, his claim would fail the damages element.

v. Longview Plumbing & Heating Co, Inc., 91 Wn. App. 697, 701, 958 P.2d 1035

(1998). Therefore, NTS is not entitled to attorney fees.

We affirm.

*Appelwick, C.J.*

WE CONCUR:

*Schindler, J.*                    *Becker, J.*